Corrected opinion on rehearing issued October 23, 2008









 

 

 

Corrected opinion on
rehearing issued October 23, 2008

 

 

                                                                        

 

                                                

 

 

 

 

In The

Court
of Appeals

For The

First
District of Texas




 
 
 
 
 
 
 


 

 



NO. 01-06-00605-CV

NO. 01-06-00505-CV




 
 
 
 
 
 
 


 

 



ROBERT ALPERT, ROMAN ALPERT, AND
RENEE PICAZO, GUARDIAN OF THE ESTATE OF DANIEL ALPERT, A MINOR, Appellants

 

V.

 

MARK RILEY, INDIVIDUALLY AND AS
TRUSTEE, Appellee

 

 

 

 



On
Appeal from Probate Court No. 2

Harris County, Texas

Trial Court Cause No. 305,232-401

 

 



CORRECTED OPINION ON REHEARING

The parties filed motions for
rehearing, and Mark Riley also moved for rehearing en banc. We grant rehearing
and withdraw our opinion and judgment of October 9, 2008 and issue the
following in their stead.[1]  
Our disposition of the case remains unchanged.

In this trust management dispute
involving three separate trusts, Roman Alpert and Renee Picazo, Guardian of the
Estate of Daniel Alpert, a minor (collectively, the beneficiaries), appeal the
trial court’s judgment.  Specifically, they contend that the trial court erred
in granting summary judgment that Mark Riley, appellee, was trustee of the
three trusts as a matter of law, and in denying their motion urging the
opposite conclusion—that, as a matter of law, he was not.  The beneficiaries
also ask that we reverse the judgment for other reasons, asserting that the
trial court erred in (1) disregarding the jury’s finding that Riley breached
his fiduciary duty; (2) confirming Riley’s payment of attorney’s fees and
refusing to enter judgment against Riley for their attorney’s fees; and (3)
reappointing Riley as his own successor trustee.  

Robert Alpert, the trusts’ settlor
and father of the beneficiaries, also appeals the trial court’s judgment, which
finds him liable for breach of fiduciary duty and awards over $4 million in
damages and attorney’s fees to Riley on behalf of the trusts, pursuant to the
trial court and jury findings that Alpert breached his fiduciary duty to the
beneficiaries.  Alpert contends that, as settlor of the trusts, (1) he had no
fiduciary duty to the trusts, and (2) Riley has no standing to sue him absent
such a duty.  

We conclude that (1) the trial court
erred in declaring Riley to be trustee of the three trusts as a matter of law
because fact issues exist as to his status as trustee for two of the trusts,
and he is not a trustee of the third trust pursuant to the express terms of the
trust instrument; (2) the judgment against Alpert for breach of fiduciary duty
must be reversed because, under the terms of these trusts, the settlor owes no
fiduciary obligation to the trust’s beneficiaries and Riley, as trustee, has no
standing to sue the parent of a trust beneficiary for breach of a parent’s
fiduciary duty to a minor child; (3) the trial court erred in disregarding the
jury’s verdict as to Riley’s breach of fiduciary duty but, as the jury awarded
no damages, the beneficiaries recover nothing on the jury verdict; (4) while a
remand is appropriate after reinstatement of the verdict as to Riley’s breach
of fiduciary duty to consider the remedy of equitable disgorgement of trustee
compensation, a remand is unnecessary here because Riley is not entitled to
trustee compensation as a matter of law; and (5) the trial court’s award of
attorney’s fees, and the denial of the beneficiaries’ claim for fees, must be
reversed and remanded for further proceedings, given our resolution of the
merits.  

Alpert and the beneficiaries also
filed a separate appeal challenging the trial court’s denial of their request
that Riley post a security bond pending appeal.[2] 
Because the trial court’s decision on the bond does not constitute a final
judgment, we lack jurisdiction over that appeal and dismiss it for that reason,
but consider its substance as a request for relief under the main appeal pursuant
to Texas Rule of Appellate Procedure 24.  Tex.
R. App. P. 24.4(a).  As to the merits, we conclude that the trial court
properly denied the request for a security bond and deny the requested relief.

Facts

          In 1990, Alpert, as settlor,
created the Roman Merker Alpert Trust (RAT) and the Daniel James Alpert Trust
(DAT), to benefit each of his sons.  Both trusts name Lisa D. Santos, M.D., as
the original trustee, and, in identical language, empower Santos to appoint a
successor trustee, who in turn would have  

the power and authority to appoint a successor or successors
to himself, to take office as Trustee hereunder, and if more than one, singly,
in the order named, upon such Trustee’s ceasing to act hereunder.

 

The trusts further provide that, if Santos ceased to act as trustee and no trustee is appointed as provided, “the successor
Trustee shall be Sandra Shulak,” Robert’s sister.    

          In 1996, Alpert created
another trust for his children’s benefit.  That trust holds a minority interest
in a company which in turn holds restricted shares of a public company that
Alpert co-founded.  The 1996 trust names Anna DiLieto as the original trustee. 
If the trustee position becomes vacant, “and a successor Trustee who is willing
and able to serve” is not “otherwise provided for,” the 1996 trust reserves to
the grantor the power to appoint a successor trustee within thirty days.  If
the grantor fails to appoint a successor within the thirty-day period, the
appointment power shifts to the trust beneficiaries or their guardian.  The
1996 trust further provides that, “[a]ny successor Trustee, on executing an
acknowledged acceptance of the trusteeship and upon receipt of those assets
which are actually delivered to each successor Trustee by the prior Trustee,
shall be vested without further act on the part of anyone with all of the
estates, titles, rights, powers, duties, immunities and discretion granted to
the prior Trustee.”  

          Mark Riley is Alpert’s
former attorney, having assisted him from 1994 through 1998 in the
administration of his business and legal affairs. Among other duties, Riley
acted as legal counsel to the three trusts, as well as to various businesses in
which Alpert had an interest. 

          The parties vigorously
contest whether Riley was properly appointed as trustee of the RAT and DAT. 
Among other evidence, the record contains

·       
Letters from
successor trustee Barbara Nussbaum Carmichael to Alpert dated August 1, 1997,
tendering her resignation as trustee of the RAT and DAT and appointing Riley as
trustee[3]
of those trusts;

·       
Testimony from
Alpert and an affidavit from Carmichael stating that Carmichael’s employer
informed them that Carmichael had to stop acting as trustee of the RAT and DAT
as of September 9, 1996; and

·       
A July 1997 wire
transfer request signed by Carmichael as trustee of the RAT and DAT.

The parties likewise clash over
whether Riley was properly appointed trustee of the 1996 trust.  Salient
evidence concerning this dispute includes

·       
An April 3, 1997
letter from DiLieto resigning as trustee of 1996 Trust effective immediately,
without naming a successor; and  

·       
A letter dated
April 3, 1997 from Riley to Alpert purporting to accept designation as trustee
to the 1996 Children’s Trust.[4]

The relationship between Alpert and Riley soured in 1998, and Riley’s professional
dealings with Alpert ended.  By that time, Riley came to
believe that Alpert had sold his own stocks to trigger a tax loss, and then
caused the RAT and DAT to buy those same stocks, which allegedly resulted in
the overpayment of taxes by the trusts.  Without Alpert’s knowledge and without
notifying the beneficiaries, Riley approached the Internal Revenue Service with
information and records relating to those transactions and became an informant
against Alpert and the trusts.

The IRS did not pursue charges
against Alpert, but Riley, purporting to be trustee of the RAT and DAT, sued
Alpert to recover the tax overpayments, based on the theory that Alpert had
breached fiduciary duties he owed to the beneficiaries.  The beneficiaries
intervened in the suit, seeking a declaration that Riley was not trustee of the
RAT or DAT or, alternatively, an order removing him as trustee for breach of
fiduciary duties.  

After Riley allegedly intercepted a
tax refund check issued to the 1996 trust, its putative trustee initiated a
separate suit, seeking a declaration that Riley was not trustee of the 1996
trust.  The trial court consolidated that suit with the previously filed suit
involving the RAT and DAT.  

On April 11, 2003, the beneficiaries
moved to dismiss with prejudice all claims brought by Riley on their behalf against
Alpert in this suit.  The beneficiaries renewed this request in September 2003
and again in March 2005, and reiterated their wish that Riley discontinue this
lawsuit.  

Trial Court Proceedings

The parties filed cross-motions for
summary judgment addressing whether Riley was the properly appointed trustee of
the three trusts.  The trial court granted Riley’s motion for summary judgment
against the beneficiaries as to the RAT and DAT, determining as a matter of law
that Riley was properly appointed trustee and had properly served as trustee of
those trusts since August 1, 1997.  With respect to the 1996 trust, the trial
court initially denied summary judgment, but reconsidered that decision at the
pretrial hearing and ruled that Riley also had been properly appointed trustee
of the 1996 trust as a matter of law.  The trial court incorporated its rulings
on all three trusts into its charge to the jury.  The jury found that Riley
breached his fiduciary duty to the trusts, but awarded nothing to the beneficiaries
in damages.

As to Riley’s claims against Alpert,
the trial court also granted Riley’s motion for summary judgment, establishing
as a matter of law Alpert’s liability for breach of fiduciary duty and the
amount of damages suffered by the three trusts as a result of Alpert’s stock
transactions as a matter of law.  On those issues, the charge instructed the
jury that Alpert owed fiduciary duties to the beneficiaries, which included a
duty of loyalty to the beneficiaries, and that he had breached those duties by
engaging in acts of self‑dealing with trust assets.  The trial court also
incorporated into the charge synopses of its summary judgment rulings as to
each of five stock transactions that, according to the trial court, Alpert had
undertaken in violation of his fiduciary duties.  The trial court informed the
jury of its rulings concerning the dollar value that had accrued to Alpert’s
benefit as a result of the breach of his duties, which it determined by
tallying the losses to the trust and the profit to Alpert resulting from each
of those transactions.  These amounts, according to the trial court, totaled
about $2 million in tax losses to the trusts and profits enjoyed by Alpert. 
The court’s charge did not ask the jury for liability findings on these
matters, but did inquire whether Alpert breached his fiduciary duty with
respect to certain other transactions, with the jury concluding that he did,
but awarding nothing in damages.  The jury also awarded Riley’s attorneys
$1,517,348 in attorney’s fees for the work done on behalf of the RAT and DAT
trusts, and $57,038 for the 1996 trust.

On March 28, 2006, following
post-trial hearings, the trial court entered judgment on the jury’s findings
against Alpert.  The trial court awarded $1,234,445.50 to Riley, for each of
the RAT and DAT trusts, attorney’s fees of $656,200.78, prejudgment interest,
additional attorney’s fees of $208,688.03 incurred for each trust and appellate
fees against Alpert in connection with its summary judgment findings on the
stock transactions granted in favor of Riley.  Finally, the trial court
disregarded the jury’s breach finding against Riley and its award of attorney’s
fees to the beneficiaries.

The trial court’s judgment confirms
the trial court’s interim orders that Riley was properly appointed as trustee
of the RAT, the DAT, and the 1996 trust, and that he is trustee of those
trusts.  The judgment also terminates Riley’s trusteeship, but then reappoints
Riley to serve as trustee of the three trusts until this appeal is final.  The
trial court reconfirmed its approval of Riley’s accountings for the trusts and
requests for attorney’s fees and reimbursement of expenses incurred in
connection with the litigation on behalf of the trusts, as well as an earlier
distribution of $40,000 in trustee compensation.  None of the appellants
challenges the propriety or adequacy of those accountings on appeal, and so
they remain undisturbed, except to the extent that they are affected by
reversal of certain of the trial court’s other rulings.  

On April 21, 2006, the beneficiaries
asked the trial court to vacate the judgment based on their renewed request
that Riley stop prosecuting the claims against Alpert in exchange for a
release.  The trial court denied this request, and Alpert and the beneficiaries
gave timely notice of their appeal.

Discussion

I.       Trustee Status

The beneficiaries challenge the trial
court’s pretrial rulings declaring Riley to be trustee of the RAT, the DAT, and
the 1996 trust as a matter of law, contending that the plain language of the
trust instruments requires the opposite conclusion.  Alternatively, the
beneficiaries contend, the summary judgments should be reversed because fact
issues exist concerning whether Riley is trustee.  We address the trust
instruments in turn.

A.      Standard of review

To prevail on summary judgment, the
movant has the burden of proving that there is no genuine issue of material
fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Cathey v.
Booth, 900 S.W.2d 339, 341 (Tex. 1995).  A
defendant moving for summary judgment must either (1) disprove at least one
element of the plaintiff’s cause of action or (2) plead and conclusively
establish each essential element of an affirmative defense to rebut plaintiff’s
cause.  Cathey, 900 S.W.3d at 341.  In deciding whether there is a
disputed material fact precluding summary judgment, we take as true evidence
favorable to the non-movant, indulging every reasonable inference and resolving
any doubts in its favor.  Provident Life & Accid. Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  A matter is conclusively established if
reasonable people could not differ as to the conclusion to be drawn from the
evidence.  City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  When, as here, both sides move for summary judgment and the trial court grants
one motion and denies the other, we review the summary judgment proof presented
by both sides and determine all questions presented.  See CenterPoint Energy
Houston Elec., L.L.P. v. Old TJC Co., 177 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

B.      Waiver

          Riley claims
that the beneficiaries waived any objection they may have had to Riley’s status
as trustee by failing to object to the trial court’s inclusion in the jury
charge of its summary judgment decisions.  Riley cites Uro-Tech, Ltd. v. Somerset Partners, Corp., No. 05-96-01455-CV, 1999 WL 153130 (Tex. App.—Dallas Mar. 23,
1999, no pet.) (mem. op.), for the proposition that an appellant waives any
error by failing to object to inclusion in the jury charge of issues previously
decided on partial summary judgment.  See 1999 WL 153130 at *2–4. 
Without deciding whether we agree with Uro-Tech’s holding, we find it
distinguishable.  In that case, the parties contested whether a new statute
applied to calculate royalty payments under their contract.  Id. at *1. 
The trial court decided that it did not apply.  Id. at *1–2.  In
accordance with that decision, the charge instructed the jury to decide the
amount of damages based on the legal standard stated in the older version of
the statute.  Id. at *3.  The Dallas Court of Appeals held that the
appellant waived its challenge to the summary judgment ruling by failing to
object to that jury instruction.  Id.

          In contrast to Uro-Tech,
the jury charge in this case did not instruct the jury to apply any law or make
any fact finding that the trial court decided in the summary judgments. 
Although the issue of Riley’s trustee status was strenuously litigated both
before and after trial, it was not placed at issue during the trial, and the
jury was not asked to decide the issue because the trial court already had done
so.  The charge does not submit the issue to the jury; rather, in asking the
jury to make other findings, it merely reiterates the trial court’s summary
judgment rulings.[5] 
When a trial court grants a partial summary judgment, the issue is ripe for
appeal on final judgment if no contested issue of fact on this matter is
presented to the jury.  Because the issue of whether Riley was trustee was
never presented to the jury for resolution, Alpert and the beneficiaries were
not required to object to the charge in order to preserve their complaints
concerning the trial court’s summary judgment rulings on appeal.[6]  

C.      Principles of
Trust Construction

We interpret trust instruments the
same way as wills, contracts, and other legal documents.  Lesikar v. Moon,
237 S.W.3d 361, 366 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  The meaning
of the trust instrument is a question of law when no ambiguity exists. Nowlin
v. Frost Nat’l Bank, 908 S.W.2d 283, 286 (Tex. App.—Houston [1st Dist.]
1995, no writ).  If the court can give a definite legal meaning or
interpretation to an instrument’s words, it is unambiguous, and the court may
construe the instrument as a matter of law. Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983).  If the language is uncertain or reasonably susceptible
to more than one meaning, however, it is ambiguous, and its
interpretation presents a fact issue precluding summary judgment.  Id. at 394.

A trust instrument need not contain
any particular language to be effective.  For an express trust to be shown,
however, “(1) the words of the settlor ought to be
construed as imperative and thus imposing an obligation on the trustee, (2) the
subject to which the obligation relates must be certain, and (3) the person
intended to be the beneficiary must be certain.”  Brelsford v. Scheltz,
564 S.W.2d 404, 406 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref’d
n.r.e.), quoted in Pickelner v. Adler, 229 S.W.3d 516, 526 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied).

D.      RAT
and DAT

 

          With respect to the
trusteeship of the RAT and DAT, the beneficiaries assert that the trial court’s
summary judgment rulings must be reversed and rendered in their favor because
they conclusively proved that Riley was never properly appointed trustee.  The
beneficiaries’ assertion rests on their interpretation of the interplay between
the trustee appointment and default trusteeship provisions in the DAT and RAT. 
They observe that the trustee appointment provision confers on the trustee the
authority “to appoint a successor Trustee . . . upon her ceasing to act as a
trustee hereunder,”  and then states that the appointed successor is to take office
“upon such Trustee’s ceasing to act hereunder.”  The default trusteeship
provision states that, if the trustee “shall cease to act as Trustee and there
shall be no Trustee appointed as provided . . . still able to qualify, the
successor Trustee shall be Sandra Shulak.” 

According to the beneficiaries, these
provisions, as applied to the facts, require the conclusion that Carmichael “ceased to act” as trustee on September 9, 1996, without appointing a
successor.  The failure to appoint a successor at that time, the beneficiaries
contend, triggered the default trusteeship provision, making Sandra Shulak the
successor trustee, and thus, any subsequent act by Carmichael—namely, her
August 1997 letter appointing Riley as trustee—was ineffective as a matter of
law.  

          While we agree that the
beneficiaries’ interpretation is a reasonable one, it is not the only
reasonable interpretation of the trust language as applied to these facts.  The
problem lies in the trusts’ use of the term “ceasing to act” without temporal
constraint or other definite limitation.  In some instances, it may be obvious
when a trustee ceases to act, such as when the trustee resigns or dies.  At
other times, however, it may not be clear whether the trustee’s lack of action
is temporary because of a lull in trust activity, or whether the trustee has
abandoned the position.  Carmichael’s actions and testimony concerning whether
she was still trustee when she signed the letter appointing Riley are
equivocal, giving rise to a material dispute about when Carmichael “ceased to
act” as trustee, and therefore, whether Shulak or Riley was the proper trustee
of the RAT and DAT. 

          That evidence falls into
three categories.  The first category consists of communications relating to
Carmichael’s employer’s notice that Carmichael could not serve as trustee of
the RAT and DAT after September 9, 1996.  They include (1) an August 1996
letter from Carmichael’s employer to a financial institution in possession of
trust assets, notifying the institution that Carmichael was permitted to serve
as trustee only for an additional 30 days, and that a successor trustee was
being appointed; (2) a September 1996 letter from Alpert to a brokerage firm
notifying it that Carmichael was no longer serving as trustee; and (3) evidence
that Riley and another individual engaged in activities relating to management
of the trusts between September 1996 and August 1997.  

The second category of evidence
consists of documents identifying Carmichael as trustee on behalf of the RAT
and DAT during the summer of 1997.  The record reveals that (1) Carmichael’s
name still appeared on some trust accounts; (2) Carmichael signed a wire
transfer request for one of the trusts, on which she hand wrote “Trustee”
following her signature; and (3) Carmichael signed and sent a letter to Alpert
notifying him that she was resigning as trustee of the RAT and DAT and
appointing Mark Riley as her successor.

          The third category of
evidence consists of sworn statements made during this litigation.  They
include (1) Carmichael’s deposition testimony that she told Riley and Alpert
that she could no longer serve as trustee of the RAT and DAT during a
discussion in the summer of 1997; (2) Carmichael’s affidavit in which she
attests that she resigned as trustee on September 9, 1996; and (3) Carmichael’s
second affidavit in which she attests that she either resigned or ceased to act
as trustee on September 9, 1996.    

          The contemporaneous
recorded evidence and Carmichael’s testimony cannot be reconciled without
determining the credibility and weight that should be attributed to each piece,
a job that belongs to the fact finder.  Accordingly, the trial court erred in
granting summary judgment declaring Riley as the properly appointed trustee of
the RAT and DAT. 

E.      1996
trust

 

          In complaining that the
trial court erred in declaring Riley as trustee of the 1996 trust, the
beneficiaries contend that the undisputed evidence conclusively shows that
Riley did not accept trusteeship of the 1996 trust in accordance with the trust’s
terms.  We agree. 

According to the plain language of
the 1996 trust instrument, before a named successor can become vested with the
authority to act as trustee, the named successor must execute “an acknowledged
acceptance of the trusteeship . . . .”  The only evidence of
Riley’s written acceptance of trusteeship of the 1996 trust is his letter,
dated April 3, 1997, and addressed to Alpert, stating that Riley accepted designation
as trustee “effective immediately.”  This letter contains Riley’s signature,
but does not contain a formal acknowledgment, such as one that a notary would
execute.  In considering whether Riley’s acceptance of the trusteeship was
effective, the trial court stated

I think it all comes down to an interpretation of the
trust agreement as to what 4.3 requires.  And I don’t think acknowledged means
acknowledgment.  It means acknowledge.  If there’s not acceptance at all, then
it’s never acknowledged, and the trustee can’t be blamed for taking over
because he never took over.   

 

Thus, the trial court viewed “acknowledged” and “accepted”
as more or less synonymous with respect to the express language of the 1996
trust.  As a result, the trial court construed the term “acknowledged
acceptance” as if “acknowledged” did not modify “acceptance” in any meaningful
way and was merely redundant.  This view is contrary to the applicable rules of
construction.  

            In interpreting a contract, courts must, if possible, give effect to all its terms so none will be rendered meaningless.  Kelley-Coppedge, Inc v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  Courts must read all provisions together, interpreting the instrument so as to give each provision its intended effect.  Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994).  In ascertaining the parties’ intent, we must be particularly wary of isolating individual words, phrases, or clauses and reading them out of the context of the document as a whole.  State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995).   For example, courts should presume that words that follow one another are not intended to be redundant.  See Gulf Metals Indus., Inc. v. Chicago Ins. Co., 993 S.W.2d 800, 805 (Tex. App.—Austin 1999, pet. denied) (interpreting “sudden,” in phrase “sudden and accidental,” as having temporal meaning because “accidental” describes unforeseen or unexpected event and ascribing same meaning to “sudden” would render terms redundant and violate rule that each word in contract be given effect); see also McCreary v. Bay Area Bank & Trust, 68 S.W.3d 727, 731 (Tex. App.—Houston [14th Dist.] 2001, pet. dism’d) (refusing to construe addendum to IRA deposit contract as merely promise to pay interest on interest-bearing savings account until date of its maturity because such construction would render the addendum redundant and reduce it to superfluous agreement to abide by agreement).  Accordingly, we reject the trial court’s construction of the 1996 trust’s “execute[] an acknowledged acceptance,” to mean mere written acceptance, and consider the definition of “acknowledged” as it might reasonably apply in the context of the trust instrument.  

Acknowledgments commonly appear in
documents effecting property transfers, such as car titles and deeds.  “The
general purpose of a [formal] acknowledgment is to authenticate an instrument
as being the act of the person executing the instrument.”  Onwuteaka v.
Cohen, 846 S.W.2d 889, 894 (Tex. App.—Houston [1st Dist.] 1993, writ
denied).  In the case of a person acknowledging her acts as a trustee,
executor, or administrator of an estate, a Texas statute expressly provides
that “acknowledged” means that “the person personally appeared before the
officer taking the acknowledgment and acknowledged executing the instrument by
proper authority in the capacity stated and for the purposes and consideration
expressed in it.”  Tex. Civ. Prac. &
Rem. Code Ann. § 121.006(b)(5) (Vernon 2005).   

The term “acknowledged
acceptance”—set forth in a legal instrument drafted by lawyers and documenting
a conveyance of property rights conditioned on the execution of fiduciary
duties—can only be reasonably interpreted as requiring the prospective trustee
to personally appear before a notary public or other authorized officer to
accept the appointment and acknowledge executing the instrument.  Riley
concedes that he did not do this, but contends that the Texas Trust Code[7]
requires only that the trustee execute a “separate written acceptance”;
consequently, Riley claims, his acceptance of the trusteeship was effective without
an acknowledgment.  See Tex.
Prop. Code Ann. § 112.009(a) (Vernon 2007).  The Trust Code, however,
recognizes the primacy of the settlor’s intent as manifested in the trust
language.  See Tex. Prop. Code
Ann. § 111.0035(b) (Vernon 2007) (declaring that “[t]he terms of a trust
prevail over any provision of this subtitle,” save certain unrelated
exceptions).  The Trust Code thus requires adherence to the 1996 trust’s
requirement that a trustee’s acceptance be acknowledged.  

          Because Riley
did not accept the trusteeship in accordance with the plain terms of the
trust’s requirements, we hold that he was not, as a matter of law, properly
appointed trustee of the 1996 trust.  

          F.      Equitable defenses

As
alternative grounds for his claim to trustee status, Riley asserted in the
trial court that the appellants’ acquiescence in, and ratification of, Riley’s
assumption of trustee duties for the three trusts bars them from obtaining a
declaration that Riley is not trustee.  The summary judgment rulings, however,
cannot be sustained on those grounds.

We have
not located, and Riley does not identify, any authority that recognizes a
trustee by estoppel in the presence of express trust language outlining the
procedure for appointment of a successor trustee.  Riley first points to Coffee
v. William Marsh Rice University, which was decided before the Legislature
enacted the Texas Trust Code and involved a charitable trust.  408 S.W.2d 269,
284 (Tex. Civ. App.—Houston 1966, writ ref’d n.r.e.).  In charitable trusts, “there is greater occasion for the exercise of the power of
the court to permit or direct a deviation from the terms of the trust” because
of the cy pres doctrine.  Id. at 285.  This doctrine does not
apply to private express trusts like those at issue here, and “goes quite
beyond anything which is permitted in the case of private trusts.”  Id. (internal quotation omitted); see Amalgamated Transit Union, Loc. Div. 1338
v. Dallas Public Transit Bd., 430 S.W.2d 107, 117 n.6 (Tex. Civ.
App.—Dallas 1968, writ ref’d n.r.e.).  Riley’s reliance on Brault v.
Bigham is also misplaced.  493 S.W.2d 576 (Tex. Civ. App.—Waco 1973, writ
ref’d n.r.e.).  In Brault, the trial court imposed a constructive trust
on life insurance proceeds held by the named beneficiary under an insurance
policy for the benefit of four children and removed the beneficiary as trustee.
 Id. at 578–79.  In contrast to Brault, this case involves
express trusts, not constructive trusts. 

Further, Brault,
like Coffee, predates the enactment of the Texas Trust Code, which
governs express trusts such as those at issue here.  See Tex. Prop. Code Ann. § 111.005 (Vernon
2007) (“If the law codified in this subtitle repealed a statute that abrogated
or restated a common law rule, that common law rule is reestablished, except as
the contents of the rule are changed by this subtitle.”).  A court’s authority
to modify a trust’s terms is subject to section 112.054(a) of the Texas Trust Code, which provides that

(a) On the petition of a trustee or
beneficiary, a court may order that the trustee be changed, that the terms of
the trust be modified, that the trustee be directed or permitted to do acts
that are not authorized or that are forbidden by the terms of the trust, that
the trustee be prohibited from performing acts required by the terms of the
trust, or that the trust be terminated in whole or in part, if

 

(1) the purposes of the trust have been
fulfilled or have become illegal or impossible to fulfill;

 

(2) because of circumstances not known to
or anticipated by the settlor, the order will further the purposes of the
trust;

 

(3) modification of administrative,
nondispositive terms of the trust is necessary or appropriate to prevent waste
or avoid impairment of the trust’s administration . . . .

 

Tex.
Prop. Code Ann. §
112.054(a) (Vernon 2007).  Under this provision’s
plain language, a court may order modification of trust terms only on the
petition of a trustee or beneficiary.  Id.  Because Riley is not trustee of the
1996 trust as a matter of law, he lacks the authority to petition for a
modification of that trust.  Further, with respect to the RAT and DAT, the only
reason Riley advances for deviating from the trust terms concerns Alpert’s
mishandling of trust property, but the RAT and DAT do not contain any provisions
authorizing Alpert, the settlor, to conduct transactions on behalf of the
trusts, and thus his conduct should not subvert the express language of the
trust instrument.  

Riley has
not identified any of the factors under section 112.054(a) as grounds for his
request that the trial court authorize a deviation from the trusts’ terms. 
Without basis in one of the statutory grounds, the trial court lacked the power
to deviate from the trusts’ terms.  

Texas law prohibits the equitable rule
proposed by Riley for other reasons as well.  The Texas Trust Code requires
adherence to the trustee selection method prescribed in the trust instrument,
which necessarily forecloses the exercise of equitable discretion unless that
method fails.  See Tex. Prop.
Code Ann. § 113.083(a) (Vernon 2007).  The record does not reveal that
the trial court ever attempted to apply the trustee selection method prescribed
by any of the trusts before appointing Riley.  As the Supreme Court has
observed, “[w]hen a valid [instrument] already addresses
the matter, recovery under an equitable
theory is generally inconsistent with the express [instrument].”  Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d
671, 684 (Tex. 2000); see also Ledig v. Duke Energy Corp., 193 S.W.3d
167, 176 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (affirming summary
judgment that rejected claim for unjust enrichment, noting that, “when a valid,
express contract covers the subject matter of the parties’ dispute, there can
be no recovery under a quasi-contract theory . . .”).  Consequently,
Riley’s claim to trusteeship cannot be upheld on any equitable ground.

II.      Breach of Fiduciary Duty Claims against Alpert 

Alpert and the beneficiaries contend
that the trial court erred in entering judgment on Riley’s breach of fiduciary
duty claims against Alpert because, among other reasons, Riley lacks standing
to bring the claims.  We agree that Riley has no standing.  

A.      Standing

Standing is a
necessary component of a court’s subject matter jurisdiction. Tex.
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444–45 (Tex. 1993).  To have standing a party must have a “sufficient relationship with the lawsuit
so as to have a ‘justiciable interest’ in its outcome.”  Austin Nursing Ctr.
v. Lovato, 171 S.W.3d 845, 848 (Tex. 2005) (quoting 6A Charles Alan Wright, Arthur R. Miller, and
Mary Kay Kane, Wright, Miller
& Kane, Federal Practice and Procedure: Civil 2d § 1559, 441
(2d ed. 1990)).  A plaintiff must affirmatively show, through pleadings and
other evidence pertinent to the jurisdictional inquiry, a distinct interest in
the asserted conflict, such that the defendant’s actions have caused the
plaintiff some particular injury.  Hunt v. Bass, 664 S.W.2d 323, 324 (Tex. 1984); see County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).  Whether
a plaintiff has standing is a legal question we determine de novo.  See
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).   

To determine
whether Riley has standing to assert the breach of fiduciary duty claims
against Alpert, we consider (1) the scope of Riley’s duties as a trustee, which
dictates the bounds of his interest, and (2) the nature of Alpert’s alleged
wrongs.  To create an irrevocable trust, the settlor—in this case,
Alpert—transfers legal title to specific property along with the obligation to
administer the trust for the benefit of the named beneficiaries in accordance
with the terms of the trust instrument.  See Texas Prop. Code
Ann. § 111.004(4) (Vernon 2007) (defining “express trust”); Restatement (Third) of Trusts §§ 70,
76–79, 82–84 (2003) (defining the duties of a trustee).  Once a settlor
completes a transfer of assets to a trust, the beneficiaries gain beneficial
title and the trustee gains sole legal title in, and exclusive control over,
the trust property, subject to the trust instrument.  Black’s Law Dictionary 1546 (8th ed. 2004) (explaining
characteristics of various trusts); see also Pickelner, 229
S.W.3d at 526.  At the same time, the trustee, as a fiduciary, has equitable
duties to hold and manage the property for the benefit of the beneficiaries.  Tex. Prop. Code Ann. §§ 113.051,
113.056(a) (Vernon 2007).  Certain of those fiduciary duties are nondelegable. 
See Tex. Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 249 (Tex. 2002); Slay v. Burnett Trust, 187 S.W.2d 377, 387–88 (Tex. 1945); see also Transamerican
Leasing Co. v. Three Bears, Inc., 586 S.W.2d 472, 476 (Tex. 1979) (“The
general rule is that a trustee may not delegate his discretionary power to
another.  A trustee may, however, . . . give authority to another to carry out
ministerial or mechanical acts . . . .”); see generally Tex. Prop. Code Ann. § 113.018
(Vernon 2007) (allowing trustee to employ investment agents and brokers “as
reasonably necessary in the administration of the trust estate”).  Unless the
trust instrument expressly provides otherwise, a settlor has no duty to manage
trust property, and the trustee alone is responsible as a fiduciary if he
allows the settlor to mismanage trust property to the detriment of the trust.[8]  


None of the
three trusts assigned any duty to Alpert, and thus Alpert could not otherwise
owe any fiduciary duty.  Absent some assignment of duty to the settlor in the
trust instrument, a trustee has no cause of action to sue the settlor of a
trust for a breach of fiduciary duty to the trust beneficiaries.  Cf. Ray
Malooly Trust v. Juhl, 186 S.W.3d 568, 570 (Tex. 2006) (noting that under Texas law, a trust refers to “the fiduciary relationship governing the trustee with
respect to the trust property”) (emphasis added) (quoting Huie v. DeShazo,
922 S.W.2d 920, 926 (Tex. 1996) (per curiam).  A trust settlor has no fiduciary
obligation to a trust beneficiary once that trust is created, and control of
the trust assets is vested with the trustee.  See id.; see also Tex. Prop. Code Ann. § 111.004(4)
(Vernon 2007 & Supp.) (defining “express trust”).  

Acknowledging that Alpert, in his
capacity as settlor, has no fiduciary duty to the trust, Riley contends that
“[t]he basis of [his] assertion was not the settlor-beneficiary relationship,
but rather the parent-minor child relationship.”  But Riley has no
standing to sue Alpert for such a claim—it  belongs to Alpert’s children as his
children, not to Riley as holder of the legal interest in trust property held
for its beneficial owners.  Riley does not stand in loco parentis to
Alpert’s children.  Any legal interest in the trust property or fiduciary duty
to the beneficiaries does not provide Riley with standing to assert claims
against Alpert based on the alleged breach of a father’s fiduciary duty to his
sons. 

The cases Riley cites, S.V. v.
R.V., 933 S.W.2d 1 (Tex. 1996), and Thigpen v. Locke, 363 S.W.2d 247
(Tex. 1962), recognize that a parent owes a fiduciary duty to his child, but in
neither case does the Texas Supreme Court commit the prosecution for a breach
of that duty to a trustee who has no guardianship over the child.  On the
contrary, the Court has made it clear that a child, who fundamentally holds the
justiciable interest in the outcome of a suit for breach of a parent’s
fiduciary duty, may appear in court only “through a legal guardian, a ‘next
friend,’ or a guardian ad litem.”  See Austin Nursing Ctr., Inc. v. Lovato,
171 S.W.3d 845, 849 (Tex. 2005).  We hold that Riley, as trustee, lacks
standing to sue Alpert, as a father for breach of his parental duties to his
children and thus the trial court lacked subject matter jurisdiction over this
claim.  

B.      Other theories

In his brief, Riley advances two
other bases for affirming the trial court’s judgment against Alpert: violation
of federal tax law and constructive trust.  To the extent Riley attempts to sue
Alpert for violation of federal income tax regulations through a breach of
fiduciary duty theory, that theory is also unavailing.  No private cause of
action lies for violation of regulations promulgated under Internal Revenue
Code except against the U.S. Government.  See Tax Analysts v. I.R.S.,
214 F.3d 179, 185 (D.C. Cir. 2000) (finding no private right of action under
section 6104 of the Internal Revenue Code); Sigmon v. Sw. Airlines Co.,
110 F.3d 1200, 1203–05 (5th Cir. 1997); see also 26 U.S.C.S. § 7422(a)
(LEXIS 2008) (“No
suit or proceeding shall be maintained in any court for the recovery of any
internal revenue tax alleged to have been erroneously or illegally assessed or
collected . . . until a claim for refund
or credit has been duly filed with the Secretary. . . .”); 26 U.S.C.S. § 7422(f)(1) (LEXIS 2008) (“A suit [for erroneously
or illegally assessed or collected taxes] may be maintained only against the
United States . . . .” 
). 

The federal income tax law’s pervasive
“administrative scheme of enforcement is strong
evidence that Congress intended the administrative remedy to be
exclusive.”  Sigmon, 110 F.3d at 1206 (quoting Till v. Unifirst Fed. Sav. & Loan Ass’n,
653 F.2d 152, 160 (5th Cir. 1981)).  A recently enacted provision to the
Internal Revenue Code underscores this conclusion.  The new section provides
the Treasury Secretary with the authority to reward whistleblowers who aid the
Internal Revenue Service in “(1) detecting underpayments of tax, or (2)
detecting and bringing to trial and punishment persons guilty of violating
internal revenue laws or conniving at the same . . . .”  26 U.S.C.S.
§ 7623(a) (LEXIS 2008) (eff.
Dec. 20, 2006).  “When Congress acts to amend a
statute, we presume it intends its amendment to have real and substantial
effect.”  Stone v. I.N.S., 514 U.S. 386, 397, 115 S. Ct. 1537, 1545 (1995),
quoted in Peavy v. WFAA-TV, Inc., 221 F.3d 158, 169 (5th Cir.
2000).  The enactment of the new whistleblower reward statute suggests that
Congress intended both to provide a financial incentive where none existed
before and to make such a reward available exclusively through an
administrative route.  See 26 U.S.C.S. § 7263(b)(1), (3), (4)
(LEXIS 2008) (empowering IRS Whistleblower Office with broad discretion to
determine amount, if any, of award, and providing for appeal of award
determination to Tax Court).  Consequently, the judgment against Alpert cannot
be sustained under federal tax law. 

Riley also urges that the
judgment can be sustained under either a constructive trust theory, or the
theory that Alpert knowingly participated in a breach of trust, as recognized
by the Texas Supreme Court in Kinzbach Tool Co. v. Corbett-Wallace Group. 
160 S.W.2d 509, 514 (Tex. 1942).  Here, however, the questions posed to the
jury asked only whether Alpert’s conduct in certain specified transactions
constituted a breach of Alpert’s duty to the trusts.  None asked the jury to
find whether Alpert knowingly participated in or aided or abetted a breach
fiduciary duty, or asked the jury to make any findings that would furnish
grounds to impose a constructive trust on the trust assets.  Consequently,
Riley waived any claim under those theories.  See Tex. R. Civ. P. 279; Yellow Cab & Baggage Co. v. Green, 277 S.W.2d 92, 93 (Tex. 1955); Jarrin v. Sam White Oldsmobile Co., 929 S.W.2d 21, 25 (Tex.
App.—Houston [1st Dist.] 1996, writ denied).  

We conclude that Riley lacked
standing to pursue the only claim presented to the jury.  Accordingly, we
reverse the trial court’s judgment on the breach of fiduciary duty claims
against Alpert and dismiss them for lack of subject matter jurisdiction. 

III.    Breach of Trust Claim Against
Riley

The beneficiaries challenge the trial
court’s decision to disregard the jury’s finding of liability on their breach
of trust claim against Riley.  They contend that the trial court erred in
concluding that the evidence was not legally sufficient to support that finding. 
As support for their contention that the evidence is legally sufficient to
sustain the finding, the beneficiaries point to (1) testimony from witnesses
including Larry St. Martin, the Alpert Companies’ former controller, that Riley
had general knowledge about and assisted in executing many of Alpert’s stock
sales to the trusts; (2) evidence that Riley intercepted a tax refund check to
the trust and used it to pay his trustee fees and the lawyers; (3) the fact
that Riley pursued the claims against Alpert in this litigation despite the
beneficiaries’ protest; (4) multiple instances in which Riley failed to
communicate with the beneficiaries, including regarding the filing of this
lawsuit and his discussions with the IRS; and (5) Riley’s representation of
both Alpert and the trusts, which potentially posed a conflict of interest.  

The charge instructed the jury that
Riley, as trustee, owed the beneficiaries, among other duties, (1) the duty of
loyalty to the beneficiaries to administer the affairs of the trust in their
interest alone, and (2) a duty to disclose all material facts known to the
trustee that affect the beneficiaries’ rights.  The express language of the RAT
and DAT trusts requires the trustee to notify each of the beneficiaries
annually of their right to withdraw an amount equal to the aggregate amount
contributed by each donor for that calendar year, or $20,000, whichever is
less.  Roman Alpert, one of the beneficiaries, testified that he received no
communications from Riley concerning that annual right of withdrawal, and Riley
admitted that he did not communicate with the beneficiaries concerning that
matter, this suit, or his dealings with the IRS on behalf of the trust.  Based
on this evidence and the express terms of the trust, we conclude that a
rational trier of fact could conclude that Riley breached his fiduciary duty to
the trusts by failing to communicate material information.  The trial court
therefore erred in granting the judgment notwithstanding the verdict on the beneficiaries’
breach of fiduciary duty claim, and we restore the jury’s verdict.  

            The jury, however, also found zero damages in connection with its finding against Riley for breach of fiduciary duty.  The beneficiaries do not appeal the no damages finding, but instead ask that we remand the case for the court to consider equitable disgorgement based on the finding of breach.  See Tex. Prop. Code Ann. § 114.061(b) (Vernon 2007) (“If the trustee commits a breach of trust, the court may in its discretion deny him all or part of his compensation.”); Burrow v. Arce, 997 S.W.2d 229, 238–41 (Tex. 1999).  Given the jury’s conclusion that no damages obtained, any breach might not amount to the kind of “clear and serious” breach of fiduciary duty that would lead a court, acting in equity, to require the fiduciary to disgorge his fees.  See Arce, 997 S.W.2d at 241.  The beneficiaries were apprised of trust expenses through service with Riley’s court filings, they do not challenge the trial court’s approval of Riley’s accountings for the trusts, and the failures to communicate happened, in the main, after the beneficiaries and Riley became adversaries in this suit.  While the absence of actual damages is not determinative, we hold that we need not remand for consideration of equitable disgorgement, because, as we discuss in part VI of the opinion, we reverse the award of trustee compensation on other legal grounds.[9]  Our reversal of the trial court’s award of trustee compensation obviates the need for consideration of the equitable remedy of disgorgement.  


V.      Attorney’s Fees and Trustee
Compensation 

The beneficiaries assert that the trial court abused its discretion in refusing to order Riley to pay their attorney’s fees.  Section 114.064 of the Trust Code, which furnishes the authority for the beneficiaries’ request, provides that “[i]n any proceeding under this code the court may make such award of costs and reasonable and necessary attorney’s fees as may seem equitable and just.”  Tex. Prop. Code Ann. § 114.064 (Vernon 2007).  The charge asked the jury to determine “the reasonable fee for the necessary services of the Beneficiaries [sic] attorneys in this case . . . .”  The jury made affirmative findings, based on uncontroverted evidence, that (1) $162,288 for preparation and trial, (2) $35,000 for appeal to the court of appeals, and (3) $15,000 for appeal to the Texas Supreme Court were reasonable fees for those necessary services.  The trial court, in the exercise of its discretion, declined to award fees.“[O]nce the jury has found the value of reasonable and necessary services, the court must decide whether the award would be equitable and just.”  Arce, 997 S.W.2d at 245–46.  Given our disposition of other legal issues in the case, the issue of whether any award would be equitable and just warrants reconsideration.  Accordingly, we reverse the trial court’s denial of the beneficiaries’ request for attorney’s fees and remand for further proceedings on that issue.    

The beneficiaries also challenge the
trial court’s award of attorney’s fees and trustee compensation to Riley.  Our
reversal of the trial court’s judgment as it pertains to Riley’s trustee status
and the breach of trust issue requires us to reverse the confirmation of Riley’s
payment of attorney’s fees and remand for further proceedings on that issue as
well.  

We further observe that, if Riley is
found to have been properly appointed trustee of the RAT and DAT, he was
statutorily prohibited from prosecuting the damages claims against Alpert on
behalf of the trusts after April 21, 2006.  Section 113.028 of the Texas Trust
Code became effective in 2005.  See Tex.
Prop. Code Ann. § 113.028 (Vernon 2007).  That section provides  

A trustee
may not prosecute or assert a claim for damages in a cause of action against a
party who is not a beneficiary of a trust if each beneficiary of the trust
provides written notice to the trustee of the beneficiary’s opposition to the
trustee’s prosecuting or asserting the claim in the cause of action.  

Id. § 113.028(a).  The beneficiaries had previously expressed their
opposition to Riley’s prosecution of the claims against Alpert, but those
expressions occurred before section 113.028’s effective date, when Riley
retained discretion to continue the prosecution.  The Legislature removed that discretion
before the beneficiaries filed their April 21, 2006 written notice of
opposition.  Accordingly, when Riley received that opposition, he had no choice
but to heed their wishes and stop prosecuting the claims against Alpert.  

Any attorney’s fees or legal expenses
incurred in prosecuting the damages claims against Alpert after the
beneficiaries’ written notice of opposition are not authorized by the Trust
Code, and are not reasonable or necessary as a matter of law.  As a result, we
hold that Riley is not entitled to reimbursement for any attorney’s fees or
expenses incurred after April 21, 2006 in connection with his prosecution of
the claims against Alpert.    

Nor is Riley entitled to recover
compensation.  Both the RAT and DAT specify that “[n]either the original
Trustee nor any successor named herein or appointed pursuant hereto shall be
entitled to commissions or other compensation for acting as Trustee
hereunder.”  The plain language of these instruments thus precludes any
recovery of trustee compensation regardless of whether Riley was an authorized
trustee of those trusts.  And our holding that Riley is not the authorized
trustee under the 1996 trust precludes any recovery of compensation as a matter
of law for actions taken in connection with that trust.  We therefore reverse
the trial court’s award and render judgment that Riley take nothing on his
claim for trustee compensation.

VI.    Riley’s Appointment
as Successor Trustee  

 

The beneficiaries assert that the
trial court’s appointment of Riley as successor trustee of the three trusts
violates the Texas Trust Code and the trusts themselves.  We agree.  The Code
provides that

a successor trustee shall be selected according to the method, if any, prescribed in the trust instrument.  If for any reason a successor is not selected under the terms of the trust instrument, a court may and on petition of any interested person shall appoint a successor in whom the trust shall vest.  

Tex. Prop.
Code Ann. § 113.083(a). 
Each of the three trust instruments expressly provides a method for appointing
a successor trustee.  Nothing in the record indicates that those methods have
been tried and failed.  The trial court abused its discretion by resorting to
its equitable appointment power without first attempting to follow the trustee
selection methods prescribed by the trust instruments.  Consequently, we
reverse the portion of the judgment appointing Riley as successor trustee of
the trusts.  

Because the both RAT and DAT
expressly preclude any compensation for acting as trustee, the trial court also
abused its discretion in ordering that Riley receive “reasonable compensation
to be approved by the Court” for his service as successor trustee of the RAT
and DAT.  Riley may not recover compensation as a successor trustee in equity
that he would not be entitled to receive under the valid express contract.  See
Woodward v. Sw. States, Inc., 384 S.W.2d 674 (Tex. 1964); Allen v.
Berrey, 645 S.W.2d 550, 553 (Tex. App.—San Antonio 1982, writ ref’d
n.r.e.); see also Tex. Prop. Code
Ann. § 111.0035(b) (terms of trust instrument prevail over
provisions of Trust Code); Sorrell v. Sorrell, 1 S.W.3d 867, 870 (Tex.
App.—Corpus Christi 1999, no pet.) (holding that when language of trust
instrument is unambiguous, that language controls; neither trustee nor courts
can modify trustee’s powers, but must adhere to settlor’s intent).  Because the
RAT and DAT expressly foreclose the possibility that the original or any
successor trustee be compensated for his service, Riley is not entitled to
recover any compensation as successor trustee of those trusts under the
judgment.

VII.   Request for Security Bond

Alpert and the beneficiaries filed a
separate appeal challenging the trial court’s denial of their request that be
permitted to post security to suspend Riley’s reappointment as trustee pending
appeal.  The general rule is that an appeal may be taken only from a final
judgment.  Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2000).  This rule has exceptions, but none applies here.  See Tex. Civ. Prac. & Rem. Code Ann. §
15.003 (Vernon 2002 & Supp. 2007), § 51.012 (Vernon 1997), § 51.014
(Vernon Supp. 2007).  The appellants cannot appeal the trial court’s denial of
security bond because that decision does not constitute a final judgment.  See
Lehmann, 39 S.W.3d at 195 (“A judgment is
final for purposes of appeal if it disposes of all pending parties and claims
in the record, except as necessary to carry out the decree.”).  The proper
avenue for seeking the requested relief is to challenge that decision in the
cause in which the appeal is pending pursuant to Texas Rule of Appellate
Procedure 24.  Tex. R. App. P.
24.4(a).  We therefore dismiss appellate cause number 01-06-00505-CV for
want of jurisdiction.  See New York
Underwriters Ins. Co. v. Sanchez, 799
S.W.2d 677, 679 (Tex. 1990) (holding that appellate court’s assumption of
jurisdiction over interlocutory order when not expressly authorized by statute
is fundamental jurisdictional error).

We consider the substance of
appellants’ request for relief as a motion ancillary to their appeal on the
merits.  See Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d
217, 242 (Tex. 2004) (“It has long been our practice to consider the substance
of motions rather than their form.”); Doctor v. Pardue, 186 S.W.3d 4, 16 (Tex. App.—Houston [1st Dist.] 2005, pet.
denied) (“[W]e look to an instrument’s substance
rather than its form.”).   

Alpert and the beneficiaries’ request
arises out of the trial court’s denial of their motion pursuant to Texas Rule
of Appellate Procedure 24.2(a)(3) that the trial court set an amount of
security to supersede Riley’s appointment pending this appeal after the trial
court reappointed Riley as trustee of the three trusts.  Alpert and the
beneficiaries contend that the trial court erroneously disregarded the
mandatory language of the rule in failing to set an amount of security
sufficient to supersede Riley’s reappointment. 

Rule 24.2(a)(3) provides

When the
judgment is for something other than money or an interest in property, the
trial court must set the amount and type of security that the debtor must
post.  

Tex. R. App. P. 24.2(a)(3).  We agree that this
language is mandatory, but disagree that it applies to the reappointment of
Riley as trustee.

The purpose of Rule of Appellate
Procedure 24 is to provide the means for a party to suspend enforcement of a
judgment pending appeal in civil cases.  See Tex.
R. App. P. 24.  By superseding a judgment against it, the judgment
debtor may “preserve[] the status quo of the matters in litigation as they
existed before the issuance of the order or judgment from which an appeal is
taken.”  In re Tarrant County, 16 S.W.3d 914, 918 (Tex.App.—Fort Worth
2000, orig. proceeding) (citing Renger v. Jeffrey, 182 S.W.2d 701, 702
(Tex. 1944, orig. proceeding)); see Group Purchases, Inc. v. Lance Invs.,
Inc., 685 S.W.2d 729, 731 (Tex. App.—Dallas 1985, writ ref’d n.r.e.) (“A
supersedeas bond does not suspend or stay a judgment, but is a method of
suspending execution of a judgment before it becomes final and while an appeal
is pending.”).  

Riley has acted as trustee in fact
since before the inception of the lawsuit.  The trial court’s final judgment
both terminates Riley as trustee and re-appoints him as trustee pending the
appeal until all rights to appeal are exhausted.  In requesting to post a bond,
the appellants seek to change the status quo, not to preserve it.  Thus, Rule
24.2(a)(3) does not apply.  We conclude that the trial court did not err in
denying the appellants’ request to set security and likewise decline to do so. 

Conclusion

          Based on the holdings set
forth in this opinion, we rule as follows:

(1) We reverse part I of the judgment
in which the trial court disregarded the jury’s answer to Juror Question No. 8,
i.e., the affirmative answer to whether Riley breached his fiduciary duty to
the trusts or the beneficiaries, but render judgment that the beneficiaries
take nothing on this claim because the jury awarded nothing in damages, and our
other rulings obviate the claim for equitable disgorgement of trustee
compensation.  We remand the beneficiaries’ claim for attorney’s fees to the
trial court for further proceedings.

(2) We reverse part II of the
judgment ratifying and confirming the trial court’s June 21, 2004, September
30, 2004, December 14, 2004, December 21, 2004, January 31, 2004, and April 4,
2005 orders authorizing payments of expenses to Riley and fees to his counsel,
and remand for further proceedings consistent with this opinion.  We reverse
and render judgment that Riley take nothing on his claims for trustee
compensation.

(3) We reverse parts III, IV, and V
of the judgment, in which the trial court orders that Riley, as trustee of the
RAT and DAT, and on behalf of the RAT and DAT, have judgment against Alpert and
awards him damages, attorney’s fees and interest relating to those claims under
a breach of fiduciary duty theory, and dismiss those claims against Alpert for
lack of subject matter jurisdiction. 

(4) We reverse part VI of the
judgment, in which the trial court ratifies and confirms prior payments of
attorney’s fees and expenses to Riley, and remand for further proceedings
consistent with this opinion. 

(5)  We reverse part VII of the
judgment, in which the trial court awards judgment against Alpert and in favor of
Riley, individually, for Riley’s attorney’s fees and expenses, and render
judgment that Riley take nothing. 

 (6) We affirm parts VIII and IX of
the judgment.[10]


(7) We reverse part X of the
judgment, in which the trial court ratifies its prior declarations that Riley
was properly appointed Trustee of the RAT, the DAT, and the 1996 trust, and
that Riley is the trustee of those trusts and has all the powers conferred by
the Texas Trust Code and the trust instruments, and (a) with respect to the
findings relating to the RAT and DAT, remand for further proceedings consistent
with this opinion, and (b) with respect to the findings relating to the 1996
trust, render a declaration that Riley was not properly appointed trustee of
the 1996 trust, is not and has not been trustee of the 1996 trust, and does not
hold any of the powers conferred on trustees by the 1996 trust instrument and
applicable statute. 

(8)  We reverse the portion of part
XI of the judgment that approves any award of trustee compensation for Riley
and render judgment on Riley’s requests for trustee compensation that Riley
take nothing.  We affirm the remainder of part XI.  

(9)     We reverse part XII of the
judgment concerning attorney’s fees and remand for further proceedings
consistent with this opinion.

(10)   We affirm part XIII of the
judgment only to the extent it recognizes the release of Riley as trustee and
termination of his trusteeship as pertains to any trusteeship that may later be
found to be valid.  We reverse the remainder of part XIII and render judgment
that any successor trustees for the RAT, DAT, and 1996 trust are to be selected
in accordance with the terms of the applicable trust instrument, after
identification of the valid trustee for each trust.  

(11)   We reverse part XIV of the
judgment, in which the trial court taxes all costs of court against Alpert, and
remand the cause for further proceedings consistent with this opinion.

(12)   We deny the appellants’
request that Riley post a security bond pending appeal.

We dismiss the security bond appeal
filed under number 01-06‑00505‑CV for lack of jurisdiction.  We
grant appellants’ agreed motion to substitute counsel and to designate lead
counsel.  All other pending motions are dismissed as moot.  All stays granted
are lifted upon the issuance of this opinion and judgment.  

          

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.

 

 

 

 

 

 









[1]
This opinion and judgment correct an error in
the disposition as restated in the conclusion of the October 9, 2008 opinion
and the judgment to comport with our substantive disposition of the trial
court’s judgment against Alpert awarding of attorney’s fees to Riley,
individually.  We dismiss Riley’s motion for en banc rehearing as moot.  See
Brookshire Bros., Inc. v. Smith, 176 S.W.3d 30, 40 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (supp. op.).





[2]
The appeal is filed in our court under cause
number 01-06-00505-CV.





[3]
Computer word processing records and testimony
in evidence demonstrate that these letters were created on September 12 and 30,
1997, not on August 1.

 





[4]
Riley’s paralegal admitted that she did not
prepare the April 3, 1997 letter until November 18, 1997, which is consistent
with the computer’s word processing records.  Alpert testified that he did not
see that letter until 1999.  





[5]
In Bennett v. Coghlan, No.
01-04-00104-CV, 2007 WL 2332969 (Tex. App.—Houston [1st Dist.] Aug. 16, 2007,
pet. denied) (mem. op.), this Court decided that any error in granting a
partial summary judgment determining an attorney’s hourly rate was rendered
harmless by having that issue fully litigated at trial and submitted to the
jury without objection.  That decision primarily relied on the principle
underlying the Texas Supreme Court’s holding in Progressive County Mutual
Insurance Co. v. Boyd, 177 S.W.3d 919 (Tex. 2005), that subsequent events
at trial can render harmless an erroneous grant of partial summary judgment. 
2007 WL 2332969 at *2 (citing Progressive County Mut. Ins. Co., 177 S.W.3d
at 921).  Here, in contrast, none of the parties requested the jury to
determine trustee status; and such determination would have contravened the
trial court’s legal decisions.

 





[6]
Nevertheless, we observe that, during the charge
conference, Alpert objected to the jury instruction that Riley was trustee and
offered jury questions on trusteeship issues, thus informing the trial court
that the issue was contested.





[7]
The Texas Trust Code appears in Title 9 of the
Property Code.  See Tex. Prop. Code Ann. §§ 101.001 – 123.005 (Vernon 2007).





[8]
Riley also sued Alpert for conversion of trust
assets, but the trial court granted a directed verdict on that theory in favor
of Alpert, and Riley does not appeal it.  On rehearing, Riley points to the
trial court’s partial summary judgment rulings concerning the remaining
transactions, which found liability and damages against Alpert, including under
a conversion theory, in favor of the trusts, and urges that the partial summary
judgments provide separate grounds for a partial affirmance of the judgment. 
Alpert, in response, disagrees with Riley’s characterization of the trial
court’s directed verdict on the conversion claims as limited in breadth at
least as to the transactions that were not tried to a jury. The record is
unclear as to the scope of the trial court’s rulings.  Nevertheless, to the
extent that conversion claims still exist after the directed verdict, they are
governed by the other holdings in this opinion, and thus cannot serve as a
basis for partial affirmance.  We thus leave this issue to the trial court’s
consideration on remand in light of our holdings concerning Riley’s trustee
status and the effect of section 113.028 of the Texas Property Code on this
litigation.





[9]
We address this breach of trust finding against
Riley because the beneficiaries raise it in their brief.  As the finding does
not serve as the basis for an award of damages or other relief, however, it has
no practical effect on the resolution of this appeal.





[10]
These parts concern issues not raised on appeal.