**Opinion issued July 26, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00430-CV

_____

## MARK R. RILEY, Appellant

## V.

## DANIEL ALPERT, ROMAN ALPERT, AND LINDA STANLEY, AS SUCCESSOR TRUSTEE OF THE ROMAN MERKER ALPERT TRUST AND THE DANIEL JAMES ALPERT TRUST, Appellees

---

## On Appeal from Probate Court No. 2
## Harris County, Texas
## Trial Court Case No. 305232401

---

## MEMORANDUM OPINION

In this appeal after an earlier remand to the trial court, Mark Riley seeks

reversal of the trial court's summary judgment (1) recognizing Linda Stanley as a

successor trustee over the Roman Merker Alpert Trust (RAT) and the Daniel

James Alpert Trust (DAT) and (2) ordering that Riley pay restitution to the trusts for the amounts expended on attorney's fees in prosecuting claims against Robert Alpert, the settlor and father of Daniel and Roman Alpert.[1] We hold that the summary judgment record does not support the trial court's judgment against Riley, and that the trial court erred in failing to resolve the fact issue as to the validity of Riley's appointment as successor trustee for the periods during which the fees were incurred. We therefore reverse the judgment and remand the case for further proceedings.

## Background

This case arises out of disputes over the alleged depletion of trust funds. In 1998, Riley, acting as trustee of the RAT, the DAT, and the 1996 Children's Trust (the 1996 trust), sued Robert Alpert, the trusts' settlor and the trust beneficiaries' father, alleging that he had sold stocks to trigger a tax loss, and then caused the RAT and DAT to buy those stocks, resulting in the overpayment of taxes by the trusts. Riley alleged that Alpert breached fiduciary duties he owed to the trust beneficiaries. The beneficiaries intervened and countersued Riley for breach of fiduciary duty and for a declaration that Riley was not the trustee of the RAT or DAT, or alternatively, for an order removing Riley as. For nearly fifteen years, the parties have called on both state and federal courts to labor toward the resolution of

---

[1] Both sons are now of legal age and appear as appellees here.

2

their multitudinous disputes. *See, e.g.*, *Alpert v. Riley*, 274 S.W.3d 277 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *In re Alpert*, 276 S.W.3d 592 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding [mand. denied]); *Alpert v. Riley*, No. H-04-CV-3774, 2011 WL 3325884 (S.D. Tex. Aug. 2, 2011); *Alpert v. Riley*, No. H-04-3774, 2011 WL 801978 (S.D. Tex. Feb. 10, 2011); *see also Alpert v. Gerstner*, 232 S.W.3d 117 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). This chapter deals with the proceedings on the issues remanded to the probate court pursuant to our 2008 opinion and judgment.[2]

The proceedings on remand addressed the scope of our 2008 opinion, which reversed the trial court's orders authorizing payment of legal fees and expenses to the trustee's counsel for work performed in prosecuting claims against Robert Alpert on behalf of the trusts and for defending the suit brought against Riley. With respect to the 1996 trust, on remand, the Alperts sought restitution from Riley for amounts paid from the 1996 trust to him as trustee compensation while Riley

---

[2] In the federal case, settlor Robert Alpert and his sons sued Riley and his former legal assistant based on allegedly wrongful actions taken in connection with the three trusts and Riley's involvement in providing confidential information to the Internal Revenue Service. *Alpert v. Riley*, No. H-04-CV-3774, 2011 WL 3325884 (S.D. Tex. Aug. 2, 2011). In the jury trial on that suit, the district court incorporated relevant holdings from our 2008 opinion and judgment into the jury charge. 2011 WL 3325884, at *8. The federal case adjudicated only claims involving Riley's actions as purported trustee taken after the probate court entered its 2006 judgment. *Id.* at *9.

3

claimed to be trustee. Riley did not respond to the Alperts' motion for summary judgment with respect to the 1996 trust. In the fall of 2010, the trial court signed a judgment declaring that fees awarded during underlying proceeding were not necessary for the preservation, safekeeping, or management of the 1996 trust and ordered Riley to return the funds to the trust. The trial court signed a judgment severing its rulings relating to the 1996 trust from the remaining claims, all of which related to the RAT and DAT. Riley moved for a new trial, but he did not file a notice of appeal from that judgment. Thus, that judgment is not before us.

The Alperts next moved for summary judgment and asked the trial court to order Riley to pay to the RAT and DAT all of the amounts disbursed from the RAT and DAT in payment of attorney's fees during the course of the litigation. Riley did not timely respond to the motions, but he appeared at the hearing. The trial court granted the Alperts' motions and ordered that the legal fees and expenses that the probate court had ordered disbursed pursuant to its June 21, 2004, September 30, 2004, October 20, 2004, December 21, 2004, January 31, 2005, April 4, 2005, April 20, 2005, and March 28 2006 orders "were not necessary for the preservation, safekeeping, or management of the trusts; were neither just nor equitable; and should be restored to the Roman Alpert Trust and the Daniel Alpert Trust." The trial court entered judgment against Riley

4

individually in the amount of these disbursed funds. Finally, it ordered Riley to pay the beneficiaries' legal fees incurred during the course of this litigation.

**Discussion**

*I.* *Summary judgment standard of review*

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When reviewing a summary judgment motion, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

Traditional summary judgment is proper only if the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each

5

element of an affirmative defense. *Sci. Spectrum, Inc.*, 941 S.W.2d at 911. "Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." C*ity of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Because the party moving for traditional summary judgment carries the burden to establish that no material fact issue exists and that it is entitled to judgment as a matter of law, "[t]he nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense." *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000), *quoted in Grace v. Titanium Electrode Prods., Inc.*, 227 S.W.3d 293, 297 (Tex. App.—Houston [1st Dist.] 2007, no pet.). But, "a party who fails to expressly present to the trial court any written response in opposition to a motion for summary judgment waives the right to raise any arguments or issues post-judgment." *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008). Because a motion for summary judgment must stand on its own merit, the nonmovant—even without filing a response in the trial court—still may argue on appeal that the movant's summary judgment proof is insufficient as a matter of law. *Grace*, 227 S.W.3d at 297; *see Willrich*, 28 S.W.3d at 23; *Rizkallah*

6

*v. Conner*, 952 S.W.2d 580, 582–83 (Tex. App.—Houston [1st Dist.] 1997, no writ).

## II.     *Stanley's appearance as successor trustee*

As a preliminary matter, Riley challenges the legitimacy of Stanley's appointment as the current and successor trustee of the RAT and DAT, claiming that her appointment does not comply with our rulings in the first appeal. Specifically, Riley claims that Stanley's appointment violates the law of the case and, as a result, she lacks standing and capacity to appear on behalf of the trusts in the proceedings.

### A. *Law of the case*

"The 'law of the case' doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *see also Saudi v. Brieven*, 176 S.W.3d 108, 118 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Accordingly, we consider the meaning and effect of our 2008 opinion and judgment in determining whether the trial court erred in acknowledging Linda Stanley as trustee of the RAT and DAT and awarding restitution to her in that capacity, as well as in declaring that Riley "was not, under any circumstance trustee of those trusts at any time after the 2005 trial," and "ha[d] no authority to appoint successor trustees for the [RAT] and [DAT]."

7

Our 2008 judgment reversed the trial court's March 28, 2006 appointment of Riley as successor trustee of the three trusts. We held that the appointment failed to comply with the Texas Trust Code and the appointment procedure set forth in the trusts themselves. 274 S.W.3d at 296. This aspect of the 2008 appellate judgment bore directly on paragraph XIII of the trial court's 2006 judgment, as shown below:

| 2006 TRIAL COURT JUDGMENT | 2008 APPELLATE JUDGMENT |
|---|---|
| XIII. The Court recognizes that the release of Mark Riley as former Trustee of the [RAT], the [DAT], and the Robert Alpert 1996 Children's Trust terminates that trusteeship and requires the appointment of a new trustee.<br><br>It is therefore ORDERED, ADJUDGED and DECREED by the Court that Mark Riley is appointed as Trustee of the [RAT], the [DAT], and the Robert Alpert 1996 Children's Trust, effective the date of this judgment, to serve with reasonable compensation to be approved by the Court, until the final mandate is issued by the highest appellate court to consider this cause, with all the powers and duties of a Trustee under the Texas Trust Code and the Trust Indentures. | We affirm part XIII of the judgment *only to the extent it recognizes the release of Riley as trustee and termination of his trusteeship* as pertains to any trusteeship that may later be found to be valid. We *reverse* the remainder of part XIII and *render judgment that any successor trustees for the RAT, DAT, and 1996 trust are to be selected in accordance with the terms of the applicable trust instrument, after identification of the valid trustee for each trust.* 274 S.W.3d at 299 (emphasis added). |

Riley contends that Stanley's appointment as successor trustee should be voided because she accepted the appointment before "a judicial determination of

the identity of the valid trustee for each of the trusts" and before this Court issued its mandate. We disagree with both contentions.

Selection of a new trustee going forward was an issue to be determined on remand. The 2008 judgment reversed the trial court's summary judgment declaring Riley the properly appointed trustee. 274 S.W.3d at 286–88. We held that that the appointment of a successor trustee must comply with the Trust Code, which requires compliance with any trust provisions that prescribe the method for appointment. *See* TEX. PROP. CODE ANN. § 113.083(a) (West 2007); 274 S.W.3d at 296.

Riley claims that the trial court violated our mandate by failing to identify a valid trustee for the RAT and DAT before selecting the successor trustee. On remand, the Alperts contended that it was unnecessary to make this identification because the 2008 appellate judgment—which reversed Riley's appointment as interim trustee, pending appeal—created a vacancy in the trusteeship, and the trust instruments specifically provide for appointment of a successor trustee when the position is vacant. Riley does not contend that Stanley's appointment fails to comply with the pertinent trust provisions. We agree with the Alperts that the 2008 appellate judgment required the selection of a successor trustee.

9

### B. Timing of Stanley's appointment

Riley also complains that Stanley's appointment was premature. That Stanley's appointment predates the issuance of our mandate does not affect its validity. An appellate mandate is a directive to the lower court. *Saudi*, 176 S.W.3d at 116–17. The trial court need not wait for the mandate to take action in the case; it can voluntarily comply with the appellate judgment before the mandate issues, as long as the parties have exhausted their appellate remedies and the decision becomes final. *Id.* at 117. Nor does the lack of a mandate constrain the parties' extrajudicial activities. *See Lewelling v. Bosworth*, 840 S.W.2d 640, 642 (Tex. App.—Dallas 1992, orig. proceeding) ("A mandate is the official notice of the action of the appellate court, directed to the court below, advising it of the action of the appellate court and directing it to have its judgment duly recognized, obeyed, and executed."), *quoted in Saudi*, 176 S.W.3d at 116; *see also Harris Cnty. Children's Protective Servs. v. Olvera*, 971 S.W.2d 172, 175 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (observing that when appellate court issues its mandate, trial court's duty is to "give effect" to the judgment by issuing proper orders). Stanley did not appear in the proceedings until after the mandate issued. In the post-mandate world, the trusteeships had been vacant since at least March 28, 2006. *See also Alpert*, 2011 WL 801978, at *1 (granting summary judgment that "Riley did not properly reappoint himself trustee of the Three Trusts on

10

January 10, 2010"). The document appointing Stanley as successor was executed well after that date. We therefore hold that the trial court properly recognized Stanley as the current trustee for the RAT and DAT.

### C.     Standing and capacity

"A plaintiff must have both standing and capacity to bring a lawsuit." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a plaintiff has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (emphasis omitted). Riley did challenge either Stanley's standing or her capacity in the trial court. As a necessary component of a court's subject-matter jurisdiction, standing cannot be waived and can be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993). Stanley's standing, however, is not at issue. She is named solely in a representative capacity on behalf of the RAT and DAT, and Riley does not question that the trusts have a stake in the proceeding.[3]

---

[3]     Stanley, as the representative for existing parties to the suit, properly appeared in the proceeding; contrary to Riley's contention, she need not have petitioned to intervene in the suit before her appearance.

Our holding that Stanley's appointment is valid makes it unnecessary to reach Riley's challenge to Stanley's capacity. In any event, Riley waived that challenge by failing to first file a verified pleading challenging Stanley's capacity on this ground in the trial court. *See Ray Malooly Trust v. Juhl*, 186 S.W.3d 568, 571 (Tex. 2006) (citing TEX. R. CIV. P. 93(1)); *Lovato*, 171 S.W.3d at 849.

## III.   *Propriety of restitution award*

Riley next challenges the trial court's order requiring him to restore to the RAT and DAT the attorney's fees paid pursuant to orders dated June 21, 2004; September 30, 2004; October 30, 2004; December 14, 2004; December 21, 2004; January 31, 2005; April 4, 2005; and March 28, 2006; and ratified in the 2006 trial court judgment.   Riley contends that the trial court lacked subject-matter jurisdiction over the attorney's fees issue and that the law of the case doctrine precluded the trial court from re-opening the attorney's fees issue on remand.

### A. *Meaning and effect of appellate mandate on prior payments of attorney's fees*

The trial court orders at issue approved accountings that identified trust assets and expenses and reported the amounts received and disbursed under the trusts.   In addition, the orders authorized payment of legal fees and expenses incurred in Riley's litigation against Robert Alpert on behalf of the trusts as well as trustee compensation for Riley.   We look to both the mandate and the appellate opinion to interpret the mandate.   *Hudson*, 711 S.W.2d at 630.   To support his

12

contention that that the attorney's fee issues could not be re-opened on remand, Riley relies on the following portion of the mandate: [4]

| 2006 TRIAL COURT JUDGMENT | APPELLATE MANDATE |
| --- | --- |
| XI. It is further ORDERED, ADJUDGED, and DECREED that the Court approves the accountings filed by Riley as trustee of the RAT, the DAT, and the Children's Trust, and thereby approves distributions, fees, costs, and expenses therefrom by Riley as Trustee; and Riley, as Trustee of the RAT, the DAT, and the Children's Trust, is discharged as to the accountings from the inception of these trusts until the jury's verdict on June 8, 2005. | Part XI of the judgment that approves any award of trustee compensation for Riley is **reverse**d and judgment is **rendered** that Riley take nothing on his requests for trustee compensation. The remainder of part XI is **affirmed**. |

According to Riley, this paragraph precluded the trial court from addressing the attorney's fee issue on remand. Riley improperly isolates this paragraph from other portions of the 2008 opinion and judgment and its mandate that require the contrary conclusion. "A judgment should be construed as a whole toward the end of harmonizing and giving effect to all the court has written." *Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987). The following paragraphs address attorney's fees:

---

[4] Each paragraph in the mandate expressly addresses a specific paragraph in the trial court's judgment. We therefore include the corresponding paragraphs of the trial court's judgment to aid in interpreting the mandate.

13

| 2006 TRIAL COURT JUDGMENT | APPELLATE MANDATE |
|---|---|
| II.     It is further ORDERED, ADJUDGED, and DECREED that the Court ratifies and confirms the previous orders of the Court dated June 21, 2004, September 30, 2004, December 14, 2004, December 21, 2004, January 31, 2005, April 4, 2005, and a second order dated April 4, 2005, which authorized the payment of fees and expenses to counsel for Riley and to Riley in the total amount of [$617,319.97]. | Part II of the judgment ratifying and confirming the trial court's June 21, 2004, September 30, 2004, December 14, 2004, December 21, 2004, January 31, 2004, and April 4, 2005 orders authorizing payments of expenses to Riley and fees to his counsel is **reversed**, and the matter is **remanded** for further proceedings consistent with this opinion.  Part II of the judgment granting Riley's claims for trustee compensation is also **reversed** and judgment is **rendered** that Riley take nothing on his claims for trustee compensation. |
| VI.     It is further ORDERED, ADJUDGED, and DECREED that the Court ratifies and confirms the previous order of the Court dated June 21, 2004, authorizing payment to Mark Riley of [$77,965.42]. | Part VI of the judgment, in which the trial court ratifies and confirms prior payments of attorney's fees and expenses to Riley, is **reversed**, and the matter is **remanded** for further proceedings consistent with this opinion. |

The earlier appeal did not challenge the accountings themselves.  The 2008 appellate judgment left the accountings intact—but it reversed the trial court's approval of Riley's use of trust funds to pay trustee compensation and attorney's fees in those amounts.  We rendered a take-nothing judgment on the trustee compensation issue, but remanded the attorney's fee issue for further proceedings.  Our opinion explained:

> The trial court reconfirmed its approval of Riley's accountings for the trusts and requests for the attorney's fees and reimbursement of expenses incurred in connection with the litigation on behalf of the trusts, as well as an earlier distribution of . . . trustee compensation. None of the appellants challenges the propriety or adequacy of those accountings on appeal, and so they remain undisturbed, except to the extent that they are affected by reversal of certain of the trial court's other rulings.

274 S.W.3d at 284. The portion of the appellate mandate affirming "the remainder of part XI," does not render meaningless the portion reversing the trial court's judgment on attorney's fees.

Riley contends that his discharge "as to the accountings" also discharges him from liability in connection with the attorney's fees. *Texas State Bank v. Amaro* suggests otherwise. *See* 87 S.W.3d 538, 543 (Tex. 2002). There, the Texas Supreme Court rejected a trustee's contention that "'[a]pproval of an accounting involves more than merely approval of the math involved in expenditure and disbursement: approval of an accounting disposes of all claims that might be made in regard to matters relating thereto.'" *Id.* at 544–45 (internal quotation omitted). The Court distinguished between Chapter 113 of the Trust Code, entitled "Administration," which "establishes the contents of an accounting and requires the trustee to list trust property, transactions, property, cash, and all known liabilities owed by the trust," and the trustee's potential liability under Chapter 114, which concerns the "liabilities, rights, and remedies of trustees, beneficiaries, and third persons." *Id.* (citing TEX. PROP. CODE ANN. § 113.152). An

15

administrative discharge does not adjudicate a trustee's obligations or potential liability. *Id.* The trial court thus had jurisdiction to consider the Alperts' motion on the remanded attorney's fee issues.

## B. Standard for awarding attorney's fees under Probate Code

The trial court's attorney's-fee awards and the Alperts' motion for restitution on remand rely on section 114.064 of the Texas Property Code, which provides that, "[i]n any proceeding under this code the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just." The question of whether attorney's fees are equitable and just is one of law for the trial court to decide. *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161 (Tex. 2004). Whether it is equitable and just to award attorney's fees depends on the concept of fairness, in light of all the surrounding circumstances. *Id.* at 162; *see also Barshop v. Medina Cnty. Underground Water Conserv. Dist.*, 925 S.W.2d 618, 637 (Tex. 1996) ("The conclusion that an award of fees is equitable and just is not dependent on a finding that a party 'substantially prevailed.'"). We review a decision to award or deny attorney's fees under section 114.064 for an abuse of discretion. *See Hachar v. Hachar*, 153 S.W.3d 138, 142 (Tex. App.—San Antonio 2004, no pet.); *Lyco Acquisition 1984 Ltd. P'ship v. First Nat'l Bank of Amarillo*, 860 S.W.2d 117, 121–22 (Tex. App.—Amarillo 1993, writ denied); *see also Barshop*, 925 S.W.2d at 637 (discussing review of "equitable and just" fee awards

16

under Declaratory Judgment Act). "A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). There is no abuse, however, simply because a trial court may decide a matter within its discretion differently than an appellate court. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

### 1. Determination of valid trustee

Riley contends that the trial court erred in failing to resolve the question of whether he was properly appointed trustee over the RAT and DAT, because resolution of these issues in his favor would support the trial court's approval of his requests to use trust funds to pay the attorney's fees. In our 2008 opinion, we held that the trial court erred in granting summary judgment on Riley's status as trustee over the RAT and DAT. Our reversal of that ruling left open the question of who held the trusteeship during the period that Riley acted as trustee. The determination of Riley's actual or de facto trustee status was a fact issue to be decided on remand to the trial court. The 2008 appellate judgment orders that "any successor trustees for the RAT, DAT, and 1996 trust are to be selected in accordance with the terms of the applicable trust instrument, after identification of the valid trustee for each trust." 274 S.W.3d at 299. The federal district court also noted that—although the issues before it did not involve the issue of whether Riley

was authorized to act as trustee of the RAT and DAT before June 8, 2005 (the date of the jury verdict in state trial court)—"[t]he state probate court was tasked on remand to determine whether Riley was properly authorized to act as trustee of the RAT and DAT at any time before" that date. 2011 WL 3325884, at *9.

Riley contends that the trial court's failure to have a fact finder resolve the trustee identity question is error. *See Madeshko v. Abraham, Watkins, Nichols, & Friend*, 112 S.W.3d 679, 685 (Tex. App—Houston [14th Dist.] 2003, no pet.) (en banc plurality op.) ("Clearly, trial courts must obey appellate mandates, and they abuse their discretion if they do not."). We agree.

We first consider whether the trial court could properly grant summary judgment on the Alperts' motion without ascertaining whether Riley ever served as the valid trustee. The Alperts contend that the issue of Riley's trustee status is moot, because identification of the valid trustee was unnecessary to decide the remanded attorney's fees issues. "The mootness doctrine limits courts to deciding cases in which an actual controversy exists" between the parties. *FDIC v. Nueces Cnty.*, 886 S.W.2d 766, 767 (Tex. 1994).

Relying on the 2008 appellate judgment, the Alperts claim that, whether trustee or not, Riley's claims against Robert Alpert lacked merit, and thus, the trial court should not have approved the disbursement of trust funds to pay the attorney's fees incurred in prosecuting the case. The Alperts also rely on the 2008

18

appellate judgment's reinstatement of the jury's breach of trust finding against Riley, contending that, whether trustee or not, the breach finding means that the fee expenditures were neither equitable nor just and, as a result, should not be borne by the trusts. Neither ground supports the conclusion that the issue of whether Riley had trustee status is moot—an issue expressly remanded to the trial court, based on our determination that fact issues existed.

First, certain provisions in the trust instruments arguably shield the trustee from a beneficiary's efforts to second-guess the wisdom of "making any discretionary application or payment from principal" by making those decisions "final and binding upon all persons then or thereafter interested in the trust estate." The trusts also provide that "[n]o Trustee acting hereunder shall incur any liability for any act done or omitted in the exercise of his duties as Trustee in good faith." Whether Riley can invoke these protections depends on his trusteeship and his status. Second, the Alperts do not address the matter that Riley incurred attorney's fees for claims brought against him by Alpert and the beneficiaries in his capacity as trustee. Beyond the express provisions of the trusts themselves, the determination of whether the fee payments were just and equitable depends on the circumstances surrounding each fee request when it was made. Finally, our 2008 opinion also rejected any equitable recovery based on a breach of fiduciary duty claim against Riley and judgment. The jury awarded no damages, and the trial

court had found no breach of duty. In light of this, we concluded that the beneficiaries could not recover for breach of fiduciary duty.

The 2008 appellate reversal of the judgment against Robert Alpert on the basis that Riley lacked standing to pursue the breach of fiduciary duty claim against him is an after-the-fact legal assessment; it does not support summary reversal of the fee awards. *See Ridge Oil Co.*, 148 S.W.3d at 162. The reversal does not consider any good-faith reliance on legal advice in pursuing the claim, or the fact that Riley had employed other legal theories against Robert Alpert that were not raised in the 2008 appeal. Whether Riley was the valid or de facto trustee when he prosecuted the claims and made the requests for payment is relevant to whether he requested payment of attorney's fees in good faith. We hold that the Alperts failed to show their entitlement to summary judgment as a matter of law on their claim seeking reversal of the attorney's fees awarded under section 114.064.

### 2. Restitution as basis for judgment against Riley

Riley also contends that the trial court erred in relying on a restitution theory to order Riley to reimburse the trusts for the attorney's fee disbursements. The probate court's original orders granting Riley authority to pay attorney's fees and expenses uniformly provide:

It is therefore ORDERED that the above fees and expenses are approved and that Karen Gerstner, Receiver of RAT and DAT shall pay the sum of $[*amount*] to Crain, Caton & James from the assets of each trust subject to the receivership for an aggregate amount of $[*amount*] to Crain, Caton & James, P.C.

In arguing for wholesale reimbursement to the trusts, the Alperts rely on *Drake v. Trinity Universal Insurance Co.*, 600 S.W.2d 768 (Tex. 1980), and *Outdoor Systems, Inc. v. BBE, L.L.C.*, 105 S.W.3d 66 (Tex. App.—Eastland 2003, pet. denied). *Drake* addressed "the question whether an attorney who is paid for legal services pursuant to a claim against an estate is liable to the estate for reimbursement when the court order requiring payment of his claim is reversed on appeal." 600 S.W.2d at 769. There, the attorney, Currie, made a claim against the estate for legal fees he earned in representing the estate's administratrix in resisting the application to probate the will and in defending efforts to remove her from her position. The trial court awarded the fees. The court of appeals held that the fees were not properly charged to the estate and reversed. *Id.* at 770. In holding that the attorney was required to reimburse the estate, the Supreme Court likened the situation to cases in which a judgment that is executed is later reversed on appeal, which uniformly hold that the prevailing party is entitled to restitution. *See id.* at 771. *Outdoor Systems* stands for the same principle. *See* 105 S.W.3d at 74–75 ("Texas courts have long held that a party obtaining any advantage or benefit through a trial court's judgment that is later reversed must return the benefit to the

other party."). These cases do not support summary recovery against Riley. Riley received no benefit from the trial court's approval of his requests to pay the attorneys' fees; the receiver disbursed the payments directly to the law firm representing the trustee, pursuant to an accounting approved by the trial court.

The trial court's judgment relies on the same flawed grounds in ordering that Riley, individually, pay the beneficiaries' legal fees. Riley cannot be held individually accountable for the beneficiaries' attorney's fees as damages resulting from breach of trust, because the jury found that no damages resulted from the breach. *See generally* TEX. PROP. CODE ANN. § 114.001(c) (explaining that trustee who commits breach of trust "is chargeable with any damages *resulting from such breach of trust*") (emphasis added). We conclude that the trial court erred in relying on these grounds to order Riley, in his individual capacity, to pay the beneficiaries' legal fees.

## Conclusion

We hold that the trial court erred in granting the Alperts' motion for summary judgment and restitution on the remanded attorney's fees issues incurred in connection with claims involving the RAT and DAT because the trial court failed to resolve the fact issue as to the trustee status of those trusts for the periods during which the fees were incurred. We therefore reverse the judgment and

22

remand the case for further proceedings consistent with this opinion. All pending motions are denied as moot.

Jane Bland
Justice

Panel consists of Justices Bland, Massengale, and Brown.