Opinion issued May 9, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00108-CV

_____

**PRESTON MARSHALL, Appellant**

**V.**

**RIBOSOME L.P., Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-30009**

---

## MEMORANDUM OPINION

Preston Marshall, a limited partner of Ribosome, L.P. and a beneficiary of two trusts which are also limited partners, was joined in an interpleader action brought by Frost Bank involving Preston's challenge to the ownership of funds held in a Ribosome bank account. In that action, Preston brought cross-claims against

Ribosome for (1) aiding and abetting in a breach of fiduciary duty committed by the trustee over the limited partner trusts, (2) breach of an oral agreement that Ribosome would distribute the portion of profits it owed to the trusts directly to Preston as their ultimate beneficiary, or alternatively, (3) promissory estoppel, and (4) an accounting based on allegations that Ribosome miscalculated distributions.

Ribosome moved for summary judgment on Preston's claims for aiding and abetting breach of fiduciary duty, breach of contract, and promissory estoppel claims and, in a second motion, on his accounting claim. The trial court granted both motions. On appeal, Preston contends that the trial court erred in granting summary judgment because fact issues remain on whether (1) the breaches of fiduciary duty underlying the aiding and abetting claim occurred and caused harm to Preston; (2) the profit distribution agreement was too indefinite to enforce or terminable at will; (3) Ribosome is estopped from denying the distribution agreement; and (4) challenges to Ribosome's distribution calculations require an accounting. Finding no error, we affirm.

## BACKGROUND

This dispute involves the descendants of Texas oilman J. Howard Marshall II. The Marshall family, one of the wealthiest in the country, manages its wealth through a network of partnerships, trusts, and other entities, many of which are located outside the United States. Elaine Marshall, Preston's mother, has played

2

instrumental roles in the entities involved in this dispute. MarOpCo, a management company, provides administrative services, including accounting, bookkeeping, record maintenance, and tax preparation, for the Marshall entities.

Ribosome, a limited partnership organized under the laws of the British Virgin Islands, is one of those entities. Its holdings consist of shares of non-voting stock of a trust that holds equity in Koch Industries, Inc. and Koch Holdings, LLC. Elaine serves as sole manager of Ribosome's general partner, Tanzanite Trading, LLC. Ribosome has eighteen limited partners that own units of one or more of Ribosome's seven classes of membership. Preston and his brother are limited partners, as are a number of family-owned entities and trusts. The Falcon Trust and the Harrier Trust, which Preston's parents created in 2006 for the benefit of Preston and his children, are also limited partners in Ribosome.

During most of the time pertinent to this appeal, Elaine was Trustee of the Harrier Trust and the Falcon Trust. Preston is both the income and principal beneficiary of the Harrier Trust. The Falcon Trust names Preston as the income beneficiary and his children as the principal beneficiaries. As to income distribution, the Trusts provide that

> [t]he Trustee in her sole discretion may accumulate or distribute income accruing for the benefit of the beneficiary(ies) until expiration of the trust. The Trustee shall have discretion in determining the time or frequency of any distributions.

3

Both Trusts give the trustee "the sole discretion to determine the manner, time, circumstances and conditions of the exercise of any right, power or authority vested in the Trustee."[1] The Marshalls created similar trusts to benefit their son, Pierce, Jr., and his children at or near the same time they made the Harrier and Falcon trusts.

Through MarOpCo, Ribosome periodically distributes dividends to its limited partners in an amount corresponding to the interest that each limited partner holds. As limited partners, Preston and the Trusts are entitled to receive dividends from Ribosome. The value of Preston's individual interest in Ribosome is relatively small. The trusts, though, own substantial interests in Ribosome, giving Preston a significant beneficial interest in Ribosome's distributions.

In 2006, Elaine, the President of MarOpCo, hired Preston to serve as its Vice President. In a 2007 family meeting, Preston, his brother, Pierce, Jr., and Elaine entered into an oral agreement, under which Ribosome would bypass the Trusts and pay the Trusts' shares directly to Preston as their beneficiary.[2] Preston and

---

[1] While this case was pending in the trial court, Elaine stepped down from her position as Trustee of the Falcon Trust. The Trust instrument empowered her "to select and designate one or more disinterested individuals to serve as: co-trustee, and may designate her successor should she cease or otherwise fail to serve as Trustee for any reason whatsoever." She exercised that power to appoint five successor co-trustees for the Falcon Trust.

[2] Although the parties dispute some of these facts, we consider the record in the light most favorable to Preston, the nonmovant. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 197 (Tex. 2002).

MarOpCo's then-controller implemented this distribution agreement, and it remained in place through June 2015, when Elaine terminated Preston's employment.

Shortly thereafter, Elaine ended the distribution agreement. As Trustee of the Harrier and Falcon Trusts, Elaine signed writings revoking "all previous decisions permitting Ribosome, L.P., to make distributions directly to the beneficiary" and resolving that all future Ribosome distributions to the Trusts be made by cash transfer to the Trusts' bank accounts. Since then, the Trusts have accumulated income, but Preston has not received any distributions from them. At the same time, Preston's brother, Pierce Jr., has continued to receive distributions from the similar trusts created for his and his family's benefit.

In June 2015, Preston sued MarOpCo for wrongful termination and conversion of personal property he allegedly was prevented from removing from its premises. Elaine admitted withholding distributions from Preston because she was "distressed" at the lawsuits he had initiated since she fired him from MarOpCo.

Later in 2015, Elaine, on behalf of Ribosome's general partner, asked Frost Bank to close a Ribosome account and have the funds transferred to a bank in Dallas. Preston challenged the transfer, and Frost Bank brought an interpleader action to resolve the competing claims. Several months later, when the interpleader was close to resolution, Preston brought cross-claims against Ribosome for breach of the 2007

oral agreement, promissory estoppel, and aiding and abetting breach of fiduciary duty arising out of its return to the practice of paying distributions owed to the Trusts directly to the Trusts' bank accounts. Preston also sought an accounting to correct Ribosome's purported miscalculations of distributions.

**DISCUSSION**

The trial court granted Ribosome summary judgment on Preston's claims that Ribosome (1) aided and abetted in breaches of the fiduciary duty that Elaine owed the Harrier and Falcon Trusts as their Trustee; (2) failed to comply with an oral agreement that Ribosome distribute the share of profits belonging to the Trusts directly to Preston as their beneficiary, or alternatively, (3) was estopped from changing the direct distribution practice. The trial court also granted Ribosome summary judgment on Preston's claim for a common-law accounting. Preston challenges these rulings.

## I.     Summary-Judgment Standard of Review

We review de novo a trial court's summary-judgment ruling. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Ribosome moved for summary judgment on both traditional and no-evidence grounds. *See* TEX. R. CIV. P. 166a(c), (i). To prevail on summary judgment based on traditional grounds, the movant bears the burden of proving that no genuine issue of material fact exists and that he is

entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant meets this burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (explaining that summary-judgment evidence raises fact question if reasonable and fair-minded jurors could differ in their conclusions in light of all evidence presented).

To determine whether a fact issue exists, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997), and *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996)).

Ribosome's motions for summary judgment sought dismissal on traditional grounds as to some claims and on no-evidence grounds as to others. A trial court must grant a no-evidence motion for summary judgment if the movant asserts that there is no evidence of one or more specified elements of a claim or defense on which the nonmovant would have the burden of proof at trial and if the nonmovant produces no summary-judgment evidence raising a genuine issue of material fact on each of the challenged elements. TEX. R. CIV. P. 166a(i); *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 67 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). A genuine issue of material fact exists if the nonmovant produces more than a scintilla of evidence establishing the existence of the challenged elements. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *City of Keller*, 168 S.W.3d at 827; *see Mayes*, 236 S.W.3d at 755. If the nonmovant fails to produce more than a scintilla of evidence under that burden, there is no need to analyze whether the movant's proof satisfies the rule 166a(c) burden. *Ford Motor Co.*, 135 S.W.3d at 600.

## II.    Claims Based on the Distribution Agreement

Preston contends that trial court erred in granting summary judgment on his claims against Ribosome for breach of contract, promissory estoppel, and aiding and

8

abetting a breach of fiduciary duty, all of which arise out of the termination of Ribosome's purported agreement to make distributions owed to the Harrier and Falcon Trusts as its limited partners directly to Preston as the Trusts' ultimate beneficiary.

## A.    Breach of contract

Preston argues that the summary-judgment evidence raises genuine issues of material fact concerning whether Ribosome breached the distribution agreement. Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Porter-Garcia v. Travis Law Firm*, 564 S.W.3d 75, 87 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). An enforceable and legally binding contract is formed if it is sufficiently definite in its essential terms. *See Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Essential terms are "those terms that the parties 'would reasonably regard as vitally important elements of their bargain.'" *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

It is undisputed that the parties did not set a duration for the distribution modification when they allegedly agreed to it. When duration is essential to performance, the lack of a definite time may render an agreement unenforceable. *See Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 486 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Under some circumstances, however, Texas courts have concluded that the lack of a duration term does not make an agreement unenforceable, observing that the law may imply a reasonable duration if the contract is definite enough that the court may fix the time for performance. *See id.* (citing *Moore v. Dilworth*, 179 S.W.2d 940, 942 (Tex. 1944), and *Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App.—San Antonio 1998, pet. denied)). Further, Texas courts have long considered contracts that contemplate continuing performances and are indefinite in duration—for example, a lease or an employment agreement—as terminable at will. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 841 (Tex. 2000) (quoting *Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385, 390 (Tex. 1977)).[3]

---

[3] Preston argues that cases involving employment contracts are distinguishable because employment contracts are presumptively at will. The application of an at-will presumption in the context of employment agreements, despite having a different subject matter, has nothing to do with whether an agreement like the one alleged here is terminable at will because it has features that Texas courts have recognized as manifesting an intent that the agreement can be terminated at any time for any reason.

Based on Ribosome's history of making periodic distributions pursuant to its partnership agreement and its past performance, we interpret the oral distribution agreement as contemplating that Ribosome would perform by making periodic distributions directly to Preston of the profits that otherwise would have gone to the Trusts, according to the same schedule used for making distributions to all of the limited partners. As a contract of indefinite duration that contemplated continuing or successive performance, it was terminable at the will of either party. *See Clear Lake*, 549 S.W.2d at 390; *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 678 (Tex. App.—Houston [1st Dist.] 1996, no writ) (stating, as ground alternate to holding that contract was too indefinite for enforcement, that contract was terminable at will); *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 538–39 (Tex. App.—Tyler 1992, writ denied) (agreement between retail business consultant and corporation that provided "this is an everlasting agreement," and contemplated continuing performance could be terminated at will of either party).[4]

---

[4] Preston attempts to distinguish *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527 (Tex. App.—Tyler 1992. writ denied), based on the contract's subject matter and pointing out that in this case, the distribution agreement's existence depends on the existence of the limited partner entities. He does not, however, point to any evidence showing that the entities will cease to exist on a date certain or other evidence that the contract is not of an indefinite duration.

### B. Promissory estoppel

Preston claims that the trial court erred in granting summary judgment against him on his promissory estoppel claim. Promissory estoppel is a defensive theory that estops a promisor from denying the enforceability of a promise. *Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997). The elements of a promissory estoppel claim are: (1) a promise (2) foreseeability of reliance by the promisor, and (3) substantial reliance by the promisee to his detriment. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (*citing English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). To show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise. *See id.* at 379.

According to Preston, Ribosome promised to distribute the funds it owed to the Trusts directly to Preston and he detrimentally relied on that promise by borrowing $53 million from Elaine in 2008 to make a stock purchase. Preston does not, however, allege that that Ribosome made any promise concerning the effect of the loan agreement on Ribosome's distributions to Preston or the Trusts as limited partners, let alone one that obligates Ribosome to continue distributing Trust funds directly to Preston until he repaid the loan.

Acting on behalf of Ribosome's general partner, Elaine ended the direct distributions to Preston as the Trusts' beneficiary and, as Trustee, she revoked any

12

previous decisions permitting Ribosome to make the direct distributions. Without authority to deviate from the distribution method set out in its partnership agreement, Ribosome reverted to that method, which requires that the proceeds be distributed to the limited partners—the legal owners of the proceeds. Because the direct distribution agreement was terminable at will and was not modified to address Preston's debt, the circumstances do not give rise to detrimental reliance as a matter of law. *See Miller*, 229 S.W.3d at 379 (no detrimental reliance where employee was hired at will shortly before new joint venture succeeded employer, and joint venture terminated his employment four days after succession).

## C.    Aiding and abetting breach of fiduciary duty

Preston complains that the trial court erred in granting summary judgment on his claim that Ribosome aided and abetted a breach of the fiduciary duties that Elaine owed as Trustee of the Harrier and Falcon Trusts. Ribosome challenged this claim on both no-evidence and traditional grounds, first alleging that Preston had no evidence that Elaine, as trustee, breached any fiduciary duty.

Whether a fact issue exists as to breach of fiduciary duty depends on the Trusts' terms. The construction of a trust instrument is a question of law that we review de novo. *See Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Nowlin v. Frost Nat'l Bank*, 908 S.W.2d 283, 286 (Tex. App.—Houston [1st Dist.] 1995, no writ)). We interpret

13

trust instruments the same way we construe wills, contracts, and other legal documents. *Alpert v. Riley*, 274 S.W.3d 277, 286 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). We determine the settlor's intent from the language used within the four corners of the instrument. *See Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980); *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied). The meaning of the trust instrument is a question of law when no ambiguity exists. *Alpert*, 274 S.W.3d at 286. If the court can give a definite legal meaning or interpretation to an instrument's words, it is unambiguous, and the court construes the instrument as a matter of law. *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983)); *see Hurley*, 98 S.W.3d at 310–11 (explaining that if language conferring powers on trustee unambiguously expresses settlor's intent, neither trustee nor court can take those powers away).

### 1.     Sufficiency of Ribosome's no-evidence challenge

Citing *Helm Companies v. Shady Creek Housing Partners, Ltd.*, No. 01-05-00743-CV, 2007 WL 2130186 (Tex. App.—Houston July 26, 2007, pet. denied) (mem. op.), Preston first claims that Ribosome's no-evidence motion was fatally defective because it failed to identify the elements for aiding and abetting. *See id.* at *5–6. The Texas Supreme Court has not expressly recognized aiding and abetting another's tortious conduct as a cause of action. *See First U. Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017). *Helm Companies* involved

a claim for knowing participation in a breach of fiduciary duty. *See id.* at *4. Assuming that Preston's aiding and abetting claim is comparable to the knowing participation claim in *Helm Companies*, it shares the requirement that the plaintiff prove the existence of an underlying breach of fiduciary duty.

Ribosome's motion argues that there is no issue of fact as to Preston's breach of fiduciary duty claim, which Preston relies on as the basis for his aiding and abetting claim against Ribosome. This contention is not vague or conclusory; it states the specific element of Preston's aiding and abetting claim that Ribosome challenges for lack of evidence, and thus complies with Rule 166a(i). *See* TEX. R. CIV. P. 166a(i) cmt. (explaining that motion "must be specific in challenging the evidentiary support for an element of a claim" and "conclusory motions or general no-evidence challenges to an opponent's case" are insufficient); *Neurodiagnostic Tex., L.L.C. v. Pierce*, 506 S.W.3d 153, 175 (Tex. App.—Tyler 2016, no pet.); *see also Estate of Danford*, 550 S.W.3d 275, 280 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that in no-evidence motion for summary judgment, movant asserts that there is no evidence of one or more essential elements of claims for which nonmovant bears the burden of proof at trial). Finding the motion sufficient, we turn to whether the trial court's ruling comports with the law and the record.

### 2. No evidence of breach of fiduciary duty

Preston claims that Ribosome aided and abetted breaches of the fiduciary duties that Elaine owed to the Harrier and Falcon Trusts. His aiding and abetting claim, then, relies on the existence of an underlying breach of fiduciary duty. A cause of action for breach of fiduciary duty requires the plaintiff to show (1) a fiduciary relationship between the parties, (2) the defendant's breach of fiduciary duty to the plaintiff, and (3) injury to the plaintiff or benefit to the defendant resulting from the breach. *Dauz v. Valdez*, No. 01-15-00831-CV, 2018 WL 4129826, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.) (citing *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

Preston contends that Elaine, as trustee of the Harrier and Falcon Trusts, breached her fiduciary duty by acting in bad faith to accumulate Trust income instead of distributing it to him, as had been the practice before the termination of his employment with MarOpCo. Under the Trusts' language, however, the Trustee has absolute, unfettered discretion over the decision to accumulate or distribute the Trust income. *See, e.g.*, *Caldwell v. River Oaks Tr. Co.*, No. 01-94-00273-CV, 1996 WL 227520, at *12 (Tex. App.—Houston [1st Dist.] May 2, 1996, writ denied) (mem. op.) ("A power is considered discretionary if the trustee may decide whether or not to exercise it."). In her "sole discretion," the Trustee "may accumulate or distribute income accruing for the benefit of the beneficiaries," and "determin[e] the time or

frequency of any distributions" as well as "the manner, time, circumstances, and conditions of the exercise of any right, power or authority vested in the Trustee."

Preston claims that his breach of fiduciary duty claim is supported by evidence that Elaine acted unfairly, suggesting that she knew he had come to depend on the distributions and that she had treated his brother differently under the separate trusts that benefit him. Preston labels this perceived unfairness as "bad faith"; however, a decision to accumulate interest—which the plain language of the Trusts expressly allows—and the differences in treatment between the beneficiaries of different trusts does not raise a fact issue showing a breach of fiduciary duty. Neither of the Trusts contains language limiting the trustee's discretionary authority, such as by declaring a purpose to provide living expenses or requiring the distributions to Preston to be equal to those made to Pierce, Jr. under the trusts that benefit him. *See, e.g.*, *Doherty v. JPMorgan Chase Bank, N.A.*, No. 01-08-00682-CV, 2010 WL 1053053, at * (Tex. App.—Houston [1st Dist.] Mar. 11, 2010, no pet.) (mem. op.) (holding that trustee erred in denying funds for modification of bathroom in daughter's home where beneficiary had moved after suffering stroke that left her physically impaired; trust required disbursement of funds on beneficiary's request to provide for her "comfort, health, support, or maintenance"). None of the circumstances raises a fact issue as to whether Elaine abused the broad discretionary authority conferred by the Trusts.

Further, the record has no evidence of loss or injury to Preston or the Trusts or of benefit to Elaine resulting from the decision to accumulate the Trust income instead of distributing it. Preston claims that the withholding of Trust income "causes [him] damages equal to the distributions that were wrongly withheld." But the Trusts do not give Preston any right to override the Trustee's decisions about how to handle the trust income. And, as he remains the beneficial owner of the interest income accumulated in the Trusts, he is not entitled to a damages award that would amount to a double recovery.

### 3. No evidence that Ribosome aided and abetted

Preston claims that Ribosome aided and abetted Elaine's decision to accumulate the Trust income by making distributions to the Harrier and Falcon Trusts, as their legal owners, rather than directly to him, as the Trusts' beneficiary. The Texas Supreme Court observed that, if it were to recognize a cause of action for aiding and abetting tortious conduct, "[c]ourts should look to the nature of the wrongful act, kind and amount of assistance, relation to the actor, defendant's presence while the wrongful act was committed, and defendant's state of mind." *First U. Pentecostal*, 514 S.W.3d at 225 (citing *Juhl v. Airington*, 936 S.W.2d 640, 644–45 (Tex. 1996)). Such a claim's purpose would be "to deter antisocial or dangerous behavior." *Juhl*, 936 S.W.2d at 644; *see also W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014,

18

pet. denied) (aiding and abetting claim requires actor, with unlawful intent, to give substantial assistance and encouragement to wrongdoer in tortious act).

Here, the allegedly wrongful conduct—Ribosome's distribution of proceeds to the Trusts, as limited partners, rather than to Preston, their beneficiary—is required by Ribosome's partnership agreement. Ribosome generally distributes profits to its limited partners according to the terms of its partnership agreement. It cannot deviate from those terms without direction from its general partner and the limited partner that is legally entitled to receive the share of profits. When the Trustee expressly revoked any authorization that may previously have existed for Ribosome to distribute the proceeds it owed to the Trusts directly to the Trusts' beneficiary, Ribosome lost any authority to distribute the Trusts' profits directly to Preston. No evidence shows that Ribosome gave the Trustee substantial assistance and encouragement to revoke that authorization, or that Ribosome could have acted differently had it believed the Trustee acted wrongfully by doing so. Because Ribosome's distribution of profits in compliance with its partnership agreement does not constitute conduct in furtherance of a breach of fiduciary duty, the trial court properly granted summary judgment on Preston's aiding and abetting claim.

## III.   Claim for Accounting

Finally, Preston argues that the trial court erred in dismissing his common-law claim for accounting based on Ribosome's traditional summary-judgment issue.

An accounting is available when (1) the parties have a contractual or fiduciary relationship; (2) the facts and accounts are "so complex [that] adequate relief may not be obtained at law"; and (3) standard discovery procedures cannot provide adequate relief at law. *T.F.W. Mgmt. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

In its summary-judgment motion, Ribosome argued that its partnership agreement identified any rights Preston had as to Ribosome, Ribosome had provided him with all the financial information that he was entitled to under the partnership agreement, and the agreement did not entitle Preston to a common-law accounting. Ribosome's partnership agreement identifies the rights and duties of the limited partners and their duties in relation to the partnership. With respect to financial information, the partnership agreement gives the limited partner the right to inspect Ribosome's books and records at reasonable times. It does not, however, include any additional right to an accounting, and Preston does not identify any other source that gives him that right. *See* TEX. BUS. ORGS. CODE § 153.105 (explaining that rights of limited partners may be created only by certificate of formation, partnership agreement, other statutory provisions, or other limited partnership provisions).[5]

---

[5]    Ribosome is a limited partnership formed under the laws of the British Virgin Islands. Ribosome claims that it is governed by British Virgin Islands law but does not provide a choice-of-law analysis. Because the parties do not argue otherwise, we assume the application of either British Virgin Islands law or Texas law to this issue would result in the same outcome, making a choice-of-law analysis

Preston further argues that Ribosome owes him a fiduciary duty to provide an accounting because of his limited partner status. He cites no authority for this argument and the Business Organizations Code makes clear any fiduciary powers or liabilities belong not to the limited partnership, but to its general partner. *See id.* § 153.152. Because the partnership agreement does not require Ribosome to comply with a limited partner's demand for an accounting and Ribosome does not owe Preston an independent duty that would give rise to a right to an accounting, the trial court did not err in granting summary judgment on this claim.

## CONCLUSION

We affirm the judgment of the trial court.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

---

unnecessary. *See St. Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*, 25 S.W.3d 900, 902–03 n.2 (Tex. App.—Houston [1st Dist.] 2000, no pet.).