

In The

Court of Appeals

Seventh District of Texas at Amarillo

———

No. 07-21-00238-CV

———

ROBERT E. PENTA, JR., APPELLANT

V.

BRENTON HARRIS JOHNSON, APPELLEE

On Appeal from the 200th District Court
Travis County, Texas[1]
Trial Court No. D-1-GN-20-004590, Honorable Jessica Mangrum, Presiding

January 13, 2023

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Through three issues, Appellant, Robert E. Penta, Jr., appeals from the district court's grant of a summary judgment on his contract and fraud causes of action and in favor of Appellee, Benton Harris Johnson, on his claims. For the reasons discussed below, we overrule Penta's three issues and affirm the judgment of the district court.

---

[1] This appeal was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

**Background**

In June 2020, Penta signed a contract with Johnson to purchase residential property in Austin for $2.95 million. The contract was prepared on a form promulgated by the Texas Real Estate Commission. Section 3, describing the "Sales Price," identified the source of funds for the purchase:

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ................................... $ _____ 2,000,000.00
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum,
      ☐ Loan Assumption Addendum, ☑ Seller Financing Addendum ................................ $ _____ 950,000.00
   C. Sales Price (Sum of A and B) ............................................................... $ _____ 2,950,000.00

Notable to this appeal, the box for identifying part of the funding as coming from "Third Party Financing" was left unchecked. Elsewhere, the contract provided that a buyer who failed to comply with its terms would be in default, authorizing the seller to terminate the contract, receive the earnest money as liquidated damages, and for the prevailing party to recover attorney's fees and costs. The parties expressly agreed that the "contract contain[ed] the entire agreement of the parties and cannot be changed except by their written agreement." Addenda made a part of the contract included the Seller Financing Addendum,[2] but no document agreeing to third party financing was incorporated.

Before closing, the parties disagreed about how Penta could pay for his $2.95 million purchase. He contends on appeal that the parties agreed his "cash portion" of the sales price could be obtained through third party financing, essentially permitting him to finance the entire purchase with other people's money. Johnson objected, claiming that

---

[2] This discussed the terms of Johnson's financing the $950,000 portion of the purchase price to Penta.

2

he did not agree to take a second lien position (subordinate to Penta's other lender) on the $950,000 portion of the purchase agreed to be seller-financed.

On the agreed date for closing without a resolution of their disagreement, Penta filed suit against Johnson, alleging anticipatory breach of the real estate sales contract and fraud in the inducement. Johnson responded by general denial and counterclaim, seeking a declaration that the parties agreed the $2,000,000 "cash portion" of the sales price did not include third party financing. Johnson alleged that because Penta failed to present for closing with the contractually-required amount of cash, he breached the contract, entitling Johnson to recover the earnest money and attorney fees.

Johnson later filed a "hybrid" no-evidence and traditional motion for summary judgment. Penta filed a response; in an unsworn declaration, he stated:

> During the course of the negotiations that made the basis for the purchase of the Property, [Johnson] was at all times aware that the "cash" portion of the contract was to be secured through a lender who would take a superior lien position to [Johnson's].
>
> The fact that [Johnson] knew that he would be taking a second lien position for the seller financed remainder is supported by numerous emails between [Penta's] real estate agent . . . and [Johnson's] real estate agent . . . .

Penta also included several emails with his summary judgment evidence. In one email sent two weeks before the parties executed the contract, Penta stated, in part:

> We would like to offer you $2,750,000, with $2,000,000 paid at closing. We hope you will consider seller financing $750,000, secured by a 2nd lien on the property.

3

Another email from Penta received by Johnson's agent before the contract's execution discusses "structur[ing]" the "deal" permitting Penta to "service the debt of the 1st lien."[3]

The trial court granted Johnson's no-evidence and traditional motions for summary judgment. In granting declaratory relief, the trial court decreed that the contract's reference to the $2,000,000.00 "cash portion" of the Sales Price "does not allow [Penta] to finance that portion of the purchase price in a way that requires [Johnson] to be a secondary lien holder." The order found that Penta had breached the sales contract, awarded Johnson the earnest money as liquidated damages, and awarded attorney's fees. The order also decreed that Penta take nothing on his claims.

**Analysis**

**The Contract-Related Claims**

The standard for reviewing a summary judgment has been discussed at length in other opinions and needs no further elaboration here.[4] Because construction of the real estate contract is relevant to Penta's issues complaining of the trial court's (1) grant of Johnson's traditional motion for summary judgment; (2) declaration that Johnson was not contractually required to become a second lienholder; and (3) grant of Johnson's no-evidence motion for summary judgment, we begin by examining the contract. Though he presents various shades of the same argument, a fair summary of Penta's main complaint

---

[3] Another document believed to be relevant by Penta shows a post-contract-execution email exchange between each party's real estate agents wherein Johnson's agent discusses Johnson's concerns about potentially taking a second lien position.

[4] *See King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750 (Tex. 2003); TEX. R. CIV. P. 166a.

is that the evidence shows the parties agreed that Penta could fund the "cash portion" of the purchase with third party money and that Johnson agreed to take a second lien position on the seller-financed portion. Our review of the contract is guided by several legal principles:

- When construing a written contract, our primary objective is to determine the parties' intentions by construing the document as a whole and interpreting the language according to its plain, ordinary, and generally accepted meaning "unless the lexical environment demands otherwise." *Bluestone Nat. Res. II, LLC v. Randle,* 620 S.W.3d 380, 387 (Tex. 2021). This means we must be particularly cautious of isolating individual words, phrases, or clauses and reading them out of the context of the document as a whole. *Alpert v. Riley,* 274 S.W.3d 277, 288 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

- When a contract is unambiguous – when its meaning is certain and definite – we will enforce the agreement as written. *Bluestone Nat. Res. II*, 620 S.W.3d at 387. On the other hand, if, after applying all "pertinent construction principles, a contract's language remains susceptible to two or more reasonable interpretations," we are required to find that an agreement is ambiguous. *Endeavor Energy Res., L.P. v. Energen Res. Corp.,* 615 S.W.3d 144 (Tex. 2020) (cleaned up). Under those circumstances, the finder of fact should consider the parties' evidence of their subjective intent. *Id.* at 148.

- We are unconcerned with what the parties may have intended but failed to express in an unambiguous agreement. *See Goss v. Addax Minerals Fund, LP,* No. 07-14-00167-CV, 2016 Tex. App. LEXIS 4234, at *7–8 (Tex. App.—Amarillo Apr. 21, 2016, pet. denied) (mem. op.) (deed interpretation). When an unambiguous contract contains a merger or integration clause, we must presume that all prior negotiations and agreements were merged into the contract. *Bandera Drilling Co. v. Sledge Drilling Corp.*, 293 S.W.3d 867, 871 (Tex. App.—Eastland 2009, no pet.). This means we enforce the contract as written; the terms cannot be added to, varied, or contradicted by parol evidence. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 334 (Tex. 2011).[5]

After reviewing the sales contract, we find that its language is not susceptible to two or more interpretations; it is therefore unambiguous. We find no support in the

---

[5] However, the merger rule does not bar the use of parol evidence in a claim for antecedent fraud because "fraud vitiates everything it touches." *Italian Cowboy Partners*, 341 S.W.3d at 336.

contract for Penta's argument that the document permits him to finance the "cash" portion of the sales price through an indebtedness secured by a first lien on the property. Although the summary judgment evidence shows Penta may have initially proposed "seller financing $750,000, secured by a 2nd lien on the property," those were not the terms in the executed agreement. Johnson ultimately agreed to "seller finance" a larger amount – $950,000 – and the parties indicated inclusion of a Seller Financing Addendum by checking the appropriate box. Conversely, the box indicating an agreement for third party financing was left unchecked. Penta's other summary judgment evidence might suggest Johnson was "aware" of Penta's desire to finance the cash portion through a third party and for Johnson to take a second lien position, but no record evidence indicates Johnson's assent to such an arrangement. We decline to rewrite the sales agreement given the plain, unambiguous meaning of the contract. *See Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 646 (Tex. 1996) (stating a court will not rewrite a contract to insert provisions that the parties could have included); *Natural Gas Clearinghouse v. Midgard Energy Co.,* 113 S.W.3d 400, 407 (Tex. App.—Amarillo 2003, pet. denied) (explaining a court cannot change a contract merely because one of its parties comes to dislike its provisions).

Penta points to a provision in the Seller Financing Addendum that treats a default of any obligation secured by a superior lien as also a default under the deed of trust securing the Johnson-financed note. This language, however, does not stand for the proposition that the parties agreed Penta could obtain third party financing; it merely shows the consequence of what would occur for the Johnson seller-financed note if Penta ever defaulted on a note secured by a superior lien. The plain meaning likewise does not

6

evince intent that Johnson agreed to subordinate his lien on the $950,000 promissory note. Penta decided to forego the real estate closing by filing his lawsuit and litigate over his interpretation of the contract. Because we conclude the trial court's construction of the contract was not erroneous, we hold the trial court did not err in its declaration and in granting Johnson's motions for summary judgment on the contract-related claims.

**The Fraud Claim**

We next examine Penta's cause of action that Johnson induced the sales contract by fraud. Penta offers a scant two-paragraph argument for his complaint, but includes the following:

> Knowing that the parties agreed to one thing and then representing later that they did not is the quintessential example of a material misrepresentation. The act of misrepresentation occurred later when [Johnson] indicated, through his lawyer, that the Contract did not allow for a secondary lien provision, even though that is what the parties agreed to previously in order to enter into the Contract.

Each of Penta's allegations about misrepresentations involve statements that were made *after* the sales contract had been executed.

We hold that the district court properly granted Johnson's motion for summary judgment on Penta's inducement claim. As our state's Supreme Court observed, "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. As a rule, a party is not bound by a contract procured by fraud." *Formosa Plastics Corp. United States v. Presidio Eng'rs & Contractors,* 960 S.W.2d 41, 46 (Tex. 1998). As noted above, Johnson's alleged misrepresentations regarding the contract's terms occurred *ex-post*, not *ex-ante*. Penta

7

did not present evidence that he was induced to enter into a contract because of Johnson's representations.[6] *See Mohamed Ahmed v. Hinga Mbogo,* No. 05-17-00457-CV, 2018 Tex. App. LEXIS 5849, at *32 (Tex. App.—Dallas July 30, 2018, pet. denied) (mem. op.) ("A false statement made after the parties entered into their contract could not have induced the contract."). Because we conclude there is no evidence that Penta was fraudulently induced into entering the sales contract, the trial court did not err by granting Johnson's no-evidence motion for summary judgment as to Penta's fraudulent inducement claim.

## Conclusion

Having overruled Penta's three issues, we affirm the judgment of the district court.

Lawrence M. Doss
Justice

---

[6] *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 557 (Tex. 2019) (defining elements of fraud in the inducement as including proof of a material misrepresentation "which the other party relied on.").